**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 3 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

DERWLYN ROSBOROUGH,

      Defendant - Appellant.

No. 02-8120

---

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 02-CR-76-J)**

---

David A. Kubichek, Assistant United States Attorney, (Matthew H. Mead, United States Attorney, with him on the brief) District of Wyoming, for Plaintiff - Appellee.

Jason M. Tangeman, Anthony, Nicholas, Tangeman & Yates, LLC, Laramie, Wyoming, for Defendant Appellant.

---

Before **BRISCOE**, **McWILLIAMS,** and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

Derwlyn Rosborough appeals the district court's denial of his motion to suppress evidence discovered by government agents in the search of his vehicle. We must determine under the circumstances of this case whether a canine alert

directed toward the passenger compartment of a vehicle gives rise to probable cause to search the vehicle's trunk. We must also decide if the duration of the search—approximately one hour prior to the canine alert, and one hour and fifteen minutes thereafter—implicates Fourth Amendment concerns. Exercising jurisdiction over this matter pursuant to 28 U.S.C. § 1291, we conclude that the search did not violate the Fourth Amendment and **AFFIRM**.

## I

On May 10, 2002, at approximately 9:16 a.m., Wyoming Highway Patrolman Timothy Boumeester clocked defendant Derwlyn Rosborough driving a BMW convertible at six miles per hour over the posted speed limit. Boumeester stopped the vehicle and requested Rosborough's driver's license, registration, and proof of insurance. Boumeester learned that Rosborough and his cousin, Steven Wade, were driving to Omaha, Nebraska to return the vehicle to Rosborough's sister. Boumeester confirmed the validity of both men's licenses and the vehicle registration (Rosborough did not have proof of insurance), and a criminal history check revealed that both Rosborough and Wade had criminal histories. Boumeester returned the licenses and registration, issued a written warning for speeding, and answered the men's request for directions.

Almost immediately thereafter, Boumeester asked the men if he could pose some additional questions. Upon receiving their permission, Boumeester asked if

they had any illegal substances in the vehicle. According to Boumeester's testimony at the suppression hearing, Rosborough responded by telling the officer, "[i]f you want to search the car, go ahead," to which Boumeester replied, "if you don't have a problem with that, I would like to." (2 R. at 20.) Around the same time, Patrolman Richard Griebe arrived on the scene.

According to the testimony of Boumeester and Griebe, the officers proceeded to search the vehicle, including the interior, the trunk, and the bags in the trunk; they received separate consent for each section searched. Rosborough and Wade assisted the officers in their search by opening the hood to search the vehicle's engine, removing the soft top convertible compartment, and moving the car onto the shoulder of the road.

According to Rosborough in his brief on appeal, the officers assured him at various times throughout this search that the detention would be brief, and that it would not last much longer. The record confirms that Rosborough and Wade were told repeatedly that the search would end promptly. According to Boumeester's testimony, before he began the initial search of the vehicle, around 9:27 a.m., he told Rosborough and Wade that "[t]his will just take a minute." (2 R. at 60.) After smelling an odor that he thought may have been used to mask the scent of drugs, Boumeester called for a canine unit. At about 9:34 a.m., Boumeester told Rosborough and Wade that the search would not take much

-3-

longer.

The canine unit arrived with Patrolman David Chatfield shortly after 10:00 a.m., approximately forty-five minutes into the search. The officers testified, and Rosborough does not contest, that Rosborough consented to a canine search of the inside of the vehicle. After the canine alerted toward the front passenger area, around 10:15 a.m., one of the men admitted to having smoked marijuana in the car. According to Griebe, Rosborough and Wade then revoked their consent to the search of the vehicle and expressed concern about the length of the detention.

Despite the fact that Rosborough and Wade revoked their consent after the canine alert, the patrolmen renewed the search; finding nothing in the area in which the dog alerted, they proceeded to search the trunk. Boumeester removed the carpet from the trunk and discovered a metal wall separating the trunk area and back seat. A continued search of this area revealed approximately thirty pounds of cocaine distributed among sixteen separate packages. The search ended shortly after 11:31 a.m. Rosborough and Wade were charged with conspiracy to possess with intent to distribute and possession with intent to distribute cocaine.

Rosborough moved to suppress the evidence on the grounds that the search was invalid for lack of reasonable suspicion, probable cause, or consent to search. The district court denied the motion to suppress, finding that the search was

-4-

consensual prior to the canine alert, and that the canine alert gave the officers probable cause to search the entire vehicle. Rosborough entered into a plea agreement, pleading guilty to possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). The court sentenced him to twenty years in prison, five years supervised release, and a monetary fine. Rosborough now appeals the district court's denial of his motion to suppress the evidence.

## II

In reviewing a district court's denial of a motion to suppress, we consider the evidence in the light most favorable to the government and accept the trial court's findings of fact unless they are clearly erroneous. United States v. Scroger, 98 F.3d 1256, 1259 (10th Cir. 1997). "The credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court." United States v. Long, 176 F.3d 1304, 1307 (10th Cir. 1999). We review de novo the ultimate determination of reasonableness under the Fourth Amendment, "[k]eeping in mind that the burden is on the defendant to prove that the challenged seizure was illegal . . . ." Id. (citation omitted).

In the context of routine traffic stops, a law enforcement officer may generally request a driver's license, registration, and other required papers, run requisite computer checks, and issue citations or warnings as appropriate. United

States v. Gonzalez-Lerma, 14 F.3d 1479, 1483 (10th Cir. 1994) (quotation omitted).  Further detention is appropriate only if during the course of the traffic stop, (1) the officer develops an "objectively reasonable and articulable suspicion" that the driver is engaged in some illegal activity, or (2) "the initial detention . . . become[s] a consensual encounter."  See United States v. McRae, 81 F.3d 1528, 1534 (10th Cir. 1996) (quotation omitted).   Notwithstanding these exceptions, an investigative stop must be "temporary and last no longer than is necessary to effectuate the purpose of the stop."  Florida v. Royer, 460 U.S. 491, 500 (1983).

## A

Rosborough argues that he did not voluntarily consent to the search of his vehicle.  In support of this claim, he explains that the following factors led him to consider himself in custody and not free to leave, such that his consent was not voluntary:  (1) he was stopped in a remote location about nine miles from Laramie, Wyoming; (2) more than one patrolman was present; (3) Boumeester's inquiry regarding illegal drugs immediately followed the return of Rosborough's license and registration; and (4) after Rosbourough agreed to have the car searched, he and Wade were ordered out of the vehicle, searched, and told to stand in the borrow ditch.

Whether Rosborough freely and voluntarily consented to the search of the

-6-

vehicle is a question of fact based on the totality of the circumstances, which we review for clear error. United States v. Pena, 143 F.3d 1363, 1366 (10th Cir. 1998). We consider whether the officer's conduct constituted a coercive show of authority, such that a reasonable person would believe he was not free to "decline the officer's requests or otherwise terminate the encounter." United States v. West, 219 F.3d 1171, 1176 (10th Cir. 2000) (quotation omitted). Factors tending to show that consent was coerced include the presence of more than one officer, the display of weapons, physical touching, and use of an aggressive tone. United States v. Turner, 928 F.2d 956, 959 (10th Cir. 1991).

Upon review of the relevant facts, we conclude that Rosborough's initial consent to the search of his vehicle was voluntary. First, Boumeester returned the men's papers and answered their inquiry about the distance to Laramie before asking any additional questions of the men. Second, Rosborough does not assert that Boumeester touched him, threatened him, displayed his weapon, or spoke in an aggressive tone at any point in their encounter. Moreover, Boumeester did not ask Rosborough for consent to search the vehicle; to the contrary, Rosborough himself volunteered permission to Boumeester to search his car. Although the added presence of Patrolmen Griebe had the potential to make the situation more coercive, we conclude that the district court's finding that Rosborough consented to the search is not clearly erroneous.

Rosborough also suggests that even if his consent was voluntary at the time he gave it, it ceased to be voluntary over the course of the search because he felt that he was not empowered to revoke his consent due to the coercive behavior of the officers. For example, Rosborough states in his appellate brief that the patrolmen ordered him to remain in the ditch; on two separate occasions, moreover, he and his cousin asked whether they were under arrest and when the search would be complete. In response to one such inquiry, Rosborough asserts that Griebe responded "when we get done." (Br. of Appellant at 20.) Although such coercive behavior conceivably could turn a consensual encounter into an improper detention, the record does not support such a conclusion. The police videos not only demonstrate continuous consultation between Boumeester and Rosborough, they also reveal Rosborough's active assistance in facilitating the search. Moreover, the district court noted, and Rosborough concedes, that the patrolmen acted diligently in their search and that the canine team responded with alacrity. Rosborough also concedes that he and Wade were "not nervous and in fact were quite relaxed" during the search. (Br. of Appellant at 29.) Finally, after the canine alerted, Rosborough affirmatively asked to terminate the encounter, undermining his claim that he felt unable to revoke his consent. Based on these facts, we do not find clear error and thus affirm the district court's finding that the detention remained consensual prior to the canine alert.

## B

In addition to arguing that his consent was not voluntary, Rosborough makes the related claim that the search prior to the canine alert exceeded the scope and duration of his consent. Rosborough generally argues that the extensiveness of the search exceeded the scope of his consent, and specifically asserts that because Officers Boumeester and Griebe assured him at several points that the search would be brief or end shortly, he gave his consent with the assumption that the search would be brief. Thus, Rosoborough argues, the two and one half hour detention violated the durational limitations the Fourth Amendment imposes on investigative stops.

We have held that investigative detentions arising out of routine traffic stops are analyzed under the framework of Terry v. Ohio, 392 U.S. 1 (1968), and its progeny. See United States v. Holt, 264 F.3d 1215, 1217 (10th Cir. 2001) (en banc) (per curiam). Under that line of cases, an investigative detention based upon reasonable suspicion must be limited in both scope and duration. See Royer, 460 U.S. at 500. The Supreme Court has held that a search which unduly extends a detention may violate the Fourth Amendment's requirement of reasonableness. See United States v. Place, 462 U.S. 696, 709 (1983) (holding 90-minute detention of person's luggage "alone preclude[d] the conclusion that the seizure was reasonable in the absence of probable cause"); see also United States v.

<u>Scales</u>, 903 F.2d 765, 769 (10th Cir. 1990) (holding seven-hour delay went beyond "brevity" required under Fourth Amendment); <u>United States v. Cagle</u>, 849 F.2d 924, 927 (5th Cir. 1988) (holding 90-minute detention of luggage rendered seizure sufficiently intrusive). The Court has also stated, however, that there is no absolute rule for determining how long an investigative detention may continue before it becomes unreasonable under the Fourth Amendment. <u>See</u> <u>United States v. Sharpe</u>, 470 U.S. 675, 685 (1985) (noting "our cases impose no rigid time limitation on <u>Terry</u> stops"). Rather, the length of the stop and the potential intrusion on an individual's Fourth Amendment rights must be juxtaposed against "the need to consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes." <u>Id.</u>; <u>see also</u> <u>United States v. Jones</u>, 44 F.3d 860, 871 (10th Cir. 1995).

Whether a search exceeds the scope and duration of consent is a question of fact, reviewable for clear error, which turns on what a reasonable person would have understood to be the scope and duration of his consent under the circumstances. <u>Florida v. Jimeno</u>, 500 U.S. 248, 251 (1991). A general grant of permission to search an automobile typically extends to the entire car, absent an objection or an explicit limitation by the grantee. <u>United States v. Deases</u>, 918 F.2d 118, 122 (10th Cir. 1990). Where a defendant's consent is predicated explicitly on an understanding that the search will be brief, an extended detention

-10-

sometimes exceeds the scope of the consent. <u>United States v. Wald</u>, 216 F.3d 1222, 1228 (10th Cir. 2000).

Our analysis of whether the search exceeded the scope of Rosborough's consent necessarily turns on Rosborough's conduct in granting consent. Although Rosborough argues that the search of his vehicle was more extensive than his consent permitted, the record reveals that prior to the canine alert, Boumeester requested and received separate consent to search the trunk, look in the bags, and look under the hood. Rosborough and Wade objected to the scope of the search <u>only after</u> the canine alert.

As to duration, we find nothing in the record that would suggest that Rosborough objectively communicated a request to limit the duration of the search prior to the canine alert. Unlike the case in <u>Wald</u>, where we held that an officer's request to take a "quick look" constitutes a limited request to search, <u>Wald</u>, 216 F.3d at 1228, Rosborough's consent was not predicated on the officers' statements that the detention would be brief. Instead, Rosborough generally granted permission to Boumeester to "go ahead" and search the car. (2 R. at 20.) Rosborough's consent in the instant case was confined by neither time nor location.

In addition to considering whether Rosborough limited the duration of his consent, we also look to see whether the officers acted with due diligence in

-11-

conducting the search. The Supreme Court has explained:

> In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing.

Sharpe, 470 U.S. at 686 (internal citations omitted).

Applying the Sharpe analysis here, we conclude that although this detention was lengthy, the district court correctly determined, and the record reflects, that "the officers acted diligently under the circumstances." (2 R. at 171-72.) Even Rosborough's counsel agreed there was no lack of diligence in the way the officers searched Rosborough's vehicle during the period leading up to the arrival of the canine unit. Although a half hour elapsed between the time the canine unit was called and when it arrived, the court found Chatfield was "moving it right along in order to get to the scene of the action" and "responded with alacrity." (Id. at 164.) Similarly, the court noted that, "[d]uring that one-half-hour-period, Officer Boumeester . . . diligently was searching for the source of the unique" odor. (Id.) Viewing all of these facts in a light most favorable to the government, we cannot conclude the duration of the detention was unreasonable.[1]

---

[1] Other courts considering similar facts have also reached this conclusion.
(continued...)

-12-

Moreover, the additional fact that the police asked for and received Rosborough's consent at various intervals throughout the detention also weighs strongly in favor of concluding the duration of the detention was reasonable. "It has long been established that an officer may conduct a warrantless search consistent with the Fourth Amendment if the challenging party has previously given his or her voluntary consent to that search." United States v. Ringold, 335 F.3d 1168, 1174 (10th Cir. 2003). Therefore, even if the detention arguably became more than an investigative detention, Rosborough's repeated consents negated the need for a warrant. On these facts, we conclude that the district court's determination that the search prior to the canine alert did not exceed the scope and duration of Rosborough's consent was not clearly erroneous.

## C

Rosborough also argues that the search subsequent to the canine alert in the passenger area of the vehicle exceeded the scope reasonably authorized by the alert. We review de novo the district court's legal conclusion that based on the present facts, there was probable cause to search the trunk. United States v.

[1](...continued)
See, e.g., United States v. White, 42 F.3d 457 (8th Cir. 1994) (upholding one hour and twenty minute detention of truck pending arrival of drug dog); United States v. Frost, 999 F.2d 737 (3d Cir. 1993) (upholding 80-minute detention due to delay in canine arrival); see also United States v. Rutherford, 824 F.2d 831, 833-34 (10th Cir. 1987) (upholding one-hour traffic stop where nearly half of time was occasioned by problems with police computer).

Nielson, 9 F.3d 1487, 1489 (10th Cir. 1993). Rosborough tells us that because

the dog directed its alert to the front passenger area, and not the trunk,[2] the

officers were authorized to search only the specific area alerted to (i.e., the

passenger area). We considered a factually similar scenario in United States v.

Klinginsmith, where we held that when a dog alerts to a vehicle, probable cause

arises allowing a search of the vehicle, including the trunk, without a warrant. 25

F.3d 1507, 1510 (10th Cir. 1994). In Klinginsmith, we did not indicate the

particular area of the vehicle toward which the canine alerted, but nonetheless

held generally that a canine alert gives rise to probable cause to search a vehicle.

Id.; see also United States v. Ross, 456 U.S. 798, 825 (1982) ("If probable cause

justifies the search of a lawfully stopped vehicle, it justifies the search of every

part of the vehicle and its contents that may conceal the object of the search.");

United States v. Ludwig, 10 F.3d 1523, 1528 (10th Cir. 1993) (concluding that a

canine alert outside the trunk of a vehicle creates probable cause to search the

inside of the trunk for drugs); United States v. Anchondo, 156 F.3d 1043, 1045

(10th Cir. 1998) (concluding that a canine alert outside and inside of a vehicle

creates probable cause to search the driver's person for contraband). This case

presents a species of the same question: whether a canine alert directed

_____

   [2] The canine did alert to drugs in the trunk after the officers discovered the
cocaine. For purposes of our analysis—limited to the search prior to the
discovery of cocaine—the dog alerted only in the passenger area.

-14-

exclusively at the passenger compartment of a vehicle creates probable cause to search the trunk of the vehicle.

Rosborough's argument that a canine alert toward the passenger area alone gives rise to probable cause to search only that area is not without some force; our sibling circuit in United States v. Seals, 987 F.2d 1102, 1107 n.8 (5th Cir. 1993), in considering the same question, reasoned that an initial canine alert in the passenger compartment gives rise to probable cause to search only the passenger compartment of the vehicle and not the rest of the vehicle. Notwithstanding this authority, we are compelled to arrive at a different conclusion in light of our holding in Klinginsmith, 25 F.3d at 1510, and our reasoning in Nielson, in which we suggested that a canine alert in the passenger compartment of a vehicle would give rise to probable cause to search the trunk of the vehicle. 9 F.3d at 1491.

In Nielson, we considered whether an officer's detection of the smell of burnt marijuana emanating from the passenger compartment of a vehicle gives rise to probable cause to search the trunk of the vehicle, explaining that "[t]he scope of a warrantless search of an automobile is defined by the object of the search and the places in which there is probable cause to believe that it may be found." Id. (quotation omitted). We reasoned that the smell of burnt marijuana emanating from the passenger compartment of a vehicle would lead "a person of ordinary caution to believe the passenger compartment might contain marijuana."

-15-

Id. Accordingly, we held that in such a case, probable cause would extend only to the passenger compartment—not the trunk. See id.

Although Nielson was limited to the factual scenario of an officer detecting the smell of burnt marijuana, we nonetheless suggested that the factual scenario involving a drug dog would yield a different result, explaining that in the case of

> an alert by a trained drug sniffing dog with a good record, we would not require corroboration to establish probable cause. The dog would have no reason to make a false alert . . . . [F]or a human sniffer, an officer with an incentive to find evidence of illegal activities and to justify his actions when he had searched without consent, we believe constitutional rights are endangered if limitations are not imposed.

Nielson, 9 F.3d at 1491. Thus, Nielson clearly implies that a canine alert toward the passenger compartment of a vehicle would give rise to probable cause to search the vehicle's trunk. Id.

Considering our holding in Klinginsmith and our reasoning in Nielson, it would be inconsistent for us now to adopt a conflicting rule that would limit a search to a precise area of a car. Our holdings with regard to drug dog alerts do not lend themselves to that level of exactness. A dog alert creates general probable cause to search a vehicle; it does not implicate the precision of a surgeon working with scalpel in hand. Thus, we hold that a canine alert toward the passenger area of a vehicle gives rise to probable cause to search the trunk as well; the search of Rosborough's vehicle subsequent to the canine alert was

therefore supported by probable cause.[3]

## III

We **AFFIRM** the district court's conclusion that the search of Rosborough's vehicle did not violate the Fourth Amendment.

---

[3] Rosborough additionally argues that the officers' search was not justified by reasonable suspicion. We agree with Rosborough that the extent and duration of this search could not rest on reasonable suspicion alone. However, because we conclude that the search prior to the canine alert was based on voluntary consent, and because the search subsequent to the canine alert was supported by probable cause, we need not reach this claim.