F I L E D
**United States Court of Appeals
Tenth Circuit**

**SEP 7 2004**

**PATRICK FISHER**
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JOHN H. RAYNOR and LEROY
RAYNOR,

      Defendants-Appellants.

Nos. 03-5077 and 03-5080
(D.C. No. 02-CR-103-H)
(N.D. Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN, HOLLOWAY** and **TYMKOVICH**, Circuit Judges.

These appeals challenge the constitutionality of a search following a traffic stop.
Appellants/Defendants are brothers John and Leroy Raynor who were found in the
possession of drugs and firearms after a consensual search during an extended traffic
stop. Defendants moved to suppress the fruits of the search, claiming the traffic stop was
unconstitutionally long and that the consent was not voluntary. The district court
disagreed and denied the Defendants' motion to suppress. Defendants subsequently pled
conditionally guilty to narcotic trafficking and firearm charges and reserved their right to

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

appeal the district court's ruling on their motion to suppress. Defendants now appeal that ruling.

For the reasons detailed below, we find the traffic stop and the resulting search to be reasonable and, therefore, AFFIRM the Defendants' convictions.


# I

## *Background*

Appellants/Defendants are brothers John and Leroy Raynor who were traveling in a rental van on a highway in Oklahoma with two other adults and an infant. They were stopped by Trooper Perry for changing lanes without signaling in violation of Oklahoma state traffic laws. After being pulled over, Trooper Perry asked the driver, John Raynor, to exit the vehicle and sit in Trooper Perry's patrol car. John Raynor could not produce a valid driver's license. Nonetheless, Trooper Perry informed John Raynor that he was only going to write a warning ticket for failing to signal a lane change.

Trooper Perry also inquired into John Raynor's itinerary who replied that he had come from New York and was driving to somewhere "down south." Trooper Perry then asked where the van's rental documents were located. John Raynor replied that they were located behind the sun visor in the van. During this conversation, Trooper Perry observed that John Raynor was acting in an extremely nervous manner. Trooper Perry then retrieved the van's rental documents from behind the sun visor.

While Trooper Perry was at the van, he spoke with its passengers. Leroy Raynor told Trooper Perry that they were coming from Florida, not New York as his brother had previously told Trooper Perry. Moreover, none of the passengers in the van could remember where they had stayed or what family they had supposedly visited. Trooper Perry also obtained a valid driver's license from one of the female passengers of the van, Kaya Heard. Trooper Perry then returned to his squad car and finished writing John Raynor's warning.

At this time, 47 minutes after the initial traffic stop, Trooper Perry asked for and obtained John Raynor's consent to search the van. Trooper Perry then removed the occupants of the van to another Trooper's vehicle, and walked a drug-detection dog around the van. The dog alerted on the driver's and passenger's sides of the van. Trooper Perry then searched the inside of the van and came across a TV. Trooper Perry testified that he could see food-saver bags inside the TV and that the TV rattled when shaken. Trooper Perry then smashed the TV on the ground and discovered two kilograms of cocaine and two firearms. John and Leroy Raynor were then given *Miranda* warnings and arrested.

Later, John and Leroy Raynor pled conditionally guilty to firearm and narcotics violations, reserving the right to challenge the constitutionality of the search. The district court found Trooper Perry to be a credible witness, the initial stop to be lawful, the initial search with the drug-detection dog to be consensual, and the more thorough search of the

interior to be justified by probable cause. Defendants now appeal, claiming that the search

was constitutionally deficient in three ways: (1) the initial stop was not reasonably limited

and therefore required *Miranda* warnings; (2) the consent given by John Raynor was not

voluntary; and (3) the search exceeded the scope of the consent.

## II

### *Discussion*

> "When reviewing the denial of a motion to suppress, we
> accept the factual findings of the district court unless they are
> clearly erroneous.  Judging the credibility of the witnesses,
> determining the weight to be given to evidence, and drawing
> reasonable inferences and conclusions from the evidence are
> within the province of the district court.  On appeal of a denial
> of a suppression motion, we consider the totality of the
> circumstances and view the evidence in the light most
> favorable to the government.  The ultimate determination of
> reasonableness under the Fourth Amendment is a question of
> law which we review de novo."

*United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998).

### A

### *The initial traffic stop*

"[A] traffic stop is valid under the Fourth Amendment if the stop is based on an

observed traffic violation or if the police officer has reasonable articulable suspicion that

a traffic or equipment violation has occurred or is occurring."  *United States v. Botero-*

*Ospina*, 71 F.3d 783, 787 (10th Cir. 1995). In this case, Defendants do not challenge the legality of the initial stop but rather argue that the duration of the traffic stop, lasting over 47 minutes, was constitutionally excessive.

At oral argument, the panel requested the parties to brief the issue of whether the Defendants had standing to challenge the constitutionality of Trooper Perry's search. Although "it is the defendant's burden to establish standing to challenge a fourth amendment violation . . . the government [] waive[s] this issue by failing to raise it below." *United States v. Dewitt*, 946 F.2d 1497, 1499-1500 (10th Cir. 1991). This is because Fourth Amendment standing is not jurisdictional. *United States v. DeLuca*, 269 F.3d 1128, 1135 (10th Cir. 2001). In this case, the government concedes the standing issue was not raised below and therefore could be considered waived. In any event, the Defendants do have standing to challenge the constitutionality of this search in this case.

"[A] defendant in sole possession and control of a car rented by a third party has no standing to challenge a search or seizure of the car." *United States v. Jones*, 44 F.3d 860, 871 (10th Cir. 1995). In this case, the van in which the Defendants were stopped was rented to a third party and neither Defendant was authorized to operate the vehicle. Appellant App. at 44, 51. Therefore, neither Defendant has standing to challenge the search of the car.

We, however, "distinguish passenger standing to directly challenge a vehicle search from passenger standing to seek suppression of evidence discovered in a vehicle as the

fruit of an unlawful stop, detention, or arrest." *United States v. Eylicio-Montoya*, 70 F.3d 1158, 1162 (10th Cir. 1995). And, the Defendants *do* have standing to challenge the constitutionality of the traffic stop. *Id.* at 1164 ("a passenger has standing to challenge a constitutionally improper traffic stop, detention, or arrest on Fourth Amendment grounds even though, when the seizure occurs, she has no possessory or ownership interest in either the vehicle in which she is riding or in its contents"). More specifically, the defendants challenge the extension of the traffic stop to some 47 minutes and their detention for that time, which they claim was unreasonable.

Here, Defendants challenge the constitutionality of the initial traffic stop by Trooper Perry. Therefore, the Defendants do have standing to challenge their detention. However a passenger must show some type of possessory interest in a container, like the TV set here, to have standing to challenge the intrusion into such a container. See United States v. Edwards, 242 F.3d 928, 936-37 (10th Cir. 2001). Here we feel the officers had ample probable cause to search the TV set based on the canine sniff.

"Generally, an investigative detention must last no longer than is necessary to effectuate the purpose of the stop." *United States v. Patten*, 183 F.3d 1190 (10th Cir. 1999) (internal quotation marks omitted). In the context of a traffic stop, this means that once "a driver has produced a valid license and proof of entitlement to operate the vehicle, an officer may issue a citation, but then usually must allow the driver to proceed without further delay or questioning." *Id.* However, "An officer may question the driver further if

(1) the officer has an objectively reasonable and articulable suspicion that the driver is engaged in illegal activity, or (2) the driver voluntarily consents to further questioning." *Id.*

In this case, the district court concluded the extension of the traffic stop was constitutional because Trooper Perry had an objectively reasonable and articulable suspicion that criminal activity was afoot. We agree. "A variety of factors may contribute to the formation of an objectively reasonable suspicion of illegal activity." *Hunnicutt*, 135 F.3d at 1349. These factors include having no proof of authority to operate the vehicle, *id.*, inconsistent statements about travel plans, *id.*, driving with a suspended license, *id.*, and "extreme and continued nervousness," *United States v. Williams*, 271 F.3d 1262, 1268-69 (10th Cir. 2001). All of these factors were present in this case as indicated by the district court's findings of fact.

In particular, the district court found: (1) The registered renter of the vehicle in which the Defendants were driving was not present, i.e., no proof of authority to operate the vehicle. Appendix at 20. (2) John Raynor stated they were traveling to Syracuse from somewhere "down south" while Leroy Raynor stated they were traveling to Syracuse from Tampa, FL, i.e., inconsistent statements about travel plans. *Id.* (3) John Raynor was driving with a suspended license. *Id.* at 19. (4) And John Raynor was "extremely nervous, and that nervousness never dissipated," i.e., extreme and continued nervousness. *Id.* at 20. Given the totality of these circumstances, and especially when viewed in the light most

favorable to the government, we conclude that the Defendants' further detention and questioning were justified by a reasonable articulable suspicion of illegal activity.

Defendants also argue that *Miranda* warnings should have been given because the traffic stop was not an investigative detention but rather a custodial interrogation. Ordinarily, " *Miranda* warnings are simply not implicated in the context of a valid *Terry* [traffic] stop." *United States v. Perdue*, 8 F.3d 1455, 1464 (10th Cir. 1993). Where, however, the traffic stop is effectuated using a level of force "that reache[s] the boundary line between a permissible *Terry* stop and an unconstitutional arrest," *Miranda* warnings may be required. *Id.*

In this case, the amount of force used was not of a level "more associated with formal arrest, than with the characteristically 'noncoercive' and 'nonthreatening' *Terry* [traffic] stop." *Id.* at 1464-65. Trooper Perry merely ordered John Raynor out of the van and into the patrol vehicle. Supp. to Record (Videotape from Trooper Perry's vehicle). Neither weapons nor handcuffs were used in effectuating the stop. *Id.* Thus, the amount of force used in this case was that normally associated with a routine traffic stop.

The level of force used in this case stands in stark contrast to those cases where we have held a traffic stop to require *Miranda* warnings. In *Perdue*, for example, the police forced the suspect off the road and then onto the ground. *Id.* at 1464. Moreover, the police handcuffed the suspect and questioned him at gunpoint with a helicopter hovering overhead. *Id.* In light of those extreme circumstances, we held that the stop was so

"highly intrusive" as to require *Miranda* warnings.  *Id.* at 1466.  None of those extreme factors are present in this case.  Accordingly, even though the Defendants were not free to leave, the level of force used to effectuate the stop was not so intrusive as to transform an investigative detention into a custodial interrogation that would require *Miranda* warnings.

**B**

*Consent to search*

"It has long been the rule that warrantless searches are per se unreasonable under the Fourth Amendment."  *United States v. Lopez*, 777 F.2d 543, 551 (10th Cir. 1985).  One exception to this rule is where consent was given for the search.  *United States v. Ringold*, 335 F.3d 1168, 1174 (10th Cir. 2003).  In this case, Defendants argue that the consent they gave to search the vehicle was not voluntary.  In the alternative, Defendants argue that even if consent was validly given, the resulting search exceeded the scope of the consent.  In any case, however, we conclude that no violation of the Fourth Amendment occurred because the search in this case fell under the automobile exception.

"Under the automobile exception, police officers who have probable cause to believe there is contraband inside an automobile that has been stopped on the road may search it without obtaining a warrant."  *United States v. Oliver*, 363 F.3d 1061, 1068 (10th Cir. 2004).  A police dog sniffing drugs, thus indicating that a car contains contraband, "creates general probable cause to search a vehicle."  *United States v. Rosborough*, 366

F.3d 1145, 1153 (10th Cir. 2004). "Once probable cause to search is established, the officer may search the entire vehicle, including the trunk and all containers therein that might contain contraband." *United States v. Parker*, 72 F.3d 1444, 1450 (10th Cir. 1995).

In this case, Trooper Perry walked his drug detection dog around the van. Appendix at 62. When he did so, the dog alerted to the presence of narcotics at the driver's side door. *Id.* at 61-62. The alerting of Trooper Perry's dog in this case created the necessary probable cause for a search of the van and any containers therein. *Rosborough*, 366 F.3d at 1153; *Parker*, 72 F.3d at 1450.

Moreover, the use of a drug detection dog on "an already legitimately detained automobile is not a 'search' within the meaning of the Fourth Amendment." *Hunnicutt*, 135 F.3d at 1350. As discussed above, Defendants' detention was justified by an articulable suspicion of illegal activity. Therefore, Trooper Perry could use his drug detection dog without offending the Fourth Amendment. And, since the use of the dog provided probable cause to search the vehicle and any containers therein, Trooper Perry's search of the television set was constitutional whether or not the Defendants gave consent.[1]

---

[1]As to the television set's inspection, Leroy Raynor argues on appeal only that there was no consent or probable cause. Appellant's Opening Br. at 20. As noted above, the alert of the drug detection dog provided the requisite probable cause to "open" the television. No party argues Trooper Perry's means of effectuating the search of the television was unreasonable. Nonetheless, we are troubled by Trooper Perry's decision to smash the television rather than use a less extreme means to validate or dispel his probable cause that the television contained contraband.

## III

*Conclusion*

For the reasons detailed above, we conclude that the extended traffic stop in this case was supported by an objectively reasonable and articulable suspicion of illegal activity. We also conclude that the search of the television set found inside the vehicle was justified by the probable cause created by an "alert" from the drug detection dog. Accordingly, we AFFIRM the district court's order denying Defendants' motion to suppress.

ENTERED FOR THE COURT

William J. Holloway, Jr.
Circuit Judge

---

This concern, however, does not alter the disposition of this case. Where an officer has probable cause to believe a closed container in an automobile contains contraband, that officer is constitutionally permitted to open that container, even using intrusive means. *United States v. Ross*, 456 U.S. 798, 818-19 (1982) (citing *Carroll v. United States*, 267 U.S. 132 (1925), where the police "opened the rumble seat and tore open the upholstery of the lazyback"). Whether excessive and unreasonable force was used in opening the container is relevant to whether the state is potentially liable under due process for the property damage but irrelevant as to the admissibility of the evidence seized. See *Cody v. Mello*, 59 F.3d 13, 16 (2nd Cir. 1995); *Stone v. Agnos*, 960 F.2d 893, 895-96 (9th Cir. 1992); *Bergquist v. County of Cochise*, 806 F.2d 1364, 1369 (9th Cir. 1986). Accordingly, whether Trooper Perry caused unnecessary property damage by smashing the television on the ground is irrelevant as to whether the contents of the television are admissible.