**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 22, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CHRISTOPHER DALE MASTERS,

    Defendant - Appellant.

No. 05-7031
(D.C. No. 04-CR-104-W)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **McKAY**, and **LUCERO**, Circuit Judges.[**]

Defendant-Appellant Christopher Dale Masters appeals the denial of his

motion to suppress evidence obtained during a search of his home. Mr. Masters

entered a conditional plea of guilty to one count of maintaining a place for the

purpose of manufacturing, distributing and using methamphetamine in violation

of 21 U.S.C. § 856(a)(1). Fed. R. Crim. P. 11(a)(2). After an evidentiary

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and the appellate record, this three-judge
panel has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th
Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

hearing, the district court denied the motion to suppress in an oral ruling. The district court held that Mr. Masters voluntarily consented to the search and was not impaired at the time he gave his consent. The district court's ruling rests largely upon its determination of the credibility of the witnesses. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

Background

On the evening of February 23, 2004, Bureau of Alcohol, Tobacco and Firearms ("ATF") Special Agent Knopp, two ATF Task Force Officers, and McCurtain County, Oklahoma Sheriff Willeby visited Mr. Masters' rural residence located east of Broken Bow, Oklahoma. According to the officers, the purpose of the visit was to interview Mr. Masters concerning his potential association with and knowledge of drug trafficking activities. Upon arrival, the officers noted several trailers, an outbuilding, boats, and vehicles surrounding the house on Mr. Masters' property.

Agent Knopp informed Mr. Masters that he was in possession of information linking Mr. Masters to illegal drug manufacturing, and he asked Mr. Masters for permission to look around the house and outbuildings. Mr. Masters agreed, and accompanied Agent Knopp, Sheriff Willeby, and one of the Task Force Officers, Detective Park, on a walk through of the premises. The officers'

first stop was an outbuilding. Upon their initial arrival at Mr. Masters' property, they had observed another person exiting from that same building. Upon entering, Detective Park identified several items in plain view that were consistent with the manufacture of methamphetamine. Mr. Masters claimed that he had no knowledge of the items and stated that the man seen exiting the building was most likely responsible.

The officers next asked Mr. Masters for permission to enter his residence to talk, and he assented. They entered the home and encountered several other people in the living or dining room area. The agents secured a handgun in plain view on a shelf. In order to obtain more privacy, Agent Knopp asked Mr. Masters to lead them to his bedroom. Upon entering, the officers noted a video surveillance monitor perched atop a gun safe. Detective Park asked to look through some of Mr. Masters' dresser drawers, but Mr. Masters objected and Detective Park did not investigate the drawers. Agent Knopp asked Mr. Masters if he could inspect the open gun safe, but Mr. Masters closed the door and spun the combination dial. At that point, Agent Knopp noticed a handgun in a closet in Mr. Masters bedroom. Later, Sheriff Willeby found another handgun in the dining room. Agent Knopp advised Mr. Masters that it was his belief that the gun safe contained either illegal drugs or firearms, or even both, and he asked for Mr. Masters' permission to search it.

At some point, Mr. Masters suggested he should talk with an attorney. According to the government, Agent Knopp told Mr. Masters that he had a right to do so. Mr. Masters apparently picked up his telephone and began to dial, but for some reason did not complete the call. Mr. Masters contends that this was only one of numerous instances where he indicated his desire to call his attorney. He also contends that the law enforcement officers prevented him from calling his attorney by suggesting that if he did so, they would force his friends and family, including his one-year old daughter, to stand outside in the cold and rain while they secured a search warrant.

Agent Knopp prepared a consent to search form and read it to Mr. Masters. Mr. Masters debated whether to sign the document and even suggested that the officers search the outbuildings while he considered whether to consent to a search of his home. After vacillating for a short time, Mr. Masters signed the consent form. Thereafter, the officers found several guns, two large baggies containing white powder (later determined to be methamphetamine), and cash in Mr. Masters' safe.

Mr. Masters then agreed to show the officers where in his home he kept illegal drugs and informed them of where on the premises they could locate other illegal drugs. The officers searched the premises for some time, and departed without arresting Mr. Masters.

Discussion

On appeal, Mr. Masters argues that the warrantless search of his home violated the Fourth Amendment. He contends that his consent was not voluntary because law enforcement disregarded his requests for counsel and threatened to damage his home if he refused consent and made them obtain a warrant. He further argues that any consent was preceded by an unlawful search and seizure because he was not free to leave and law enforcement actually seized a weapon. Mr. Masters also claims that he was in a state of diminished capacity–heavily medicated, and compromised by various health conditions. He also maintains that he acted out of concern for his guests and infant daughter at the home.

Upon reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government. United States v. Rosborough, 366 F.3d 1145, 1148 (10th Cir. 2004). Determining credibility of witnesses and assigning the weight to be given to evidence is the province of the district court, and we accept the district court's factual findings unless they are clearly erroneous. Id. We review de novo though, the "ultimate determination of reasonableness under the Fourth Amendment." Id.

As an initial matter, we note that the officers did not have a warrant to search Mr. Masters' home. While a warrantless search may in other circumstances stand in violation of the Fourth Amendment, it is well settled that

- 5 -

"one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973).  Valid consent is that which is "freely and voluntarily given."  Id. at 222 (internal quotations omitted).  Whether a defendant has freely and voluntarily given his consent to a search is a question of fact and is determined from the totality of the circumstances.  United States v. West, 219 F.3d 1171, 1177 (10th Cir. 2000).

The district court determined that Mr. Masters consented to the search.  First, it determined that Mr. Masters was not suffering from diminished capacity due to his intake of medication or his other claimed medical conditions.  The court took into account Mr. Masters' intelligence, his strong memory of the situation, repeated requests for counsel, and a review of his medical records.  Mr. Masters asked for counsel because he "knew what his rights were," and he was feeling threatened by events.  Motion Hrg. Tr. at 205.  Second, the district court found that Mr. Masters failed to make a clear and unequivocal request for counsel.  We agree with the district court that the ATF was not required to provide Mr. Masters with an attorney.  The consent form that Mr. Masters signed supports the district court's conclusion that Mr. Masters at all times knew that he could call an attorney, yet he did not do so.  see id. at 186.  Lastly, the district court determined that Mr. Masters failed to show that the officers had coerced

him into signing the consent form. The court noted that, unlike Mr. Masters' witnesses' testimony, Agent Knopp was "very believable," and the "clear and positive testimony" showed that "Mr. Masters' consent was unequivocal, that it was intelligently given, that it was specific, and it was freely given." Id. at 208.

The district court's findings on consent are supported by the record. The government met its burden to show that consent was voluntary. Mr. Masters made the decision to cooperate with the agents and show them what they wanted to see. We reject the notion that Mr. Masters' consent was the product of an unlawful seizure. Even though Mr. Masters was in his home, and five law enforcement officers were present, the testimony credited by the district court indicates that the situation was orderly and Mr. Masters was cooperative while weighing his options, and then deciding to cooperate fully with law enforcement. See United States v. Spence, 397 F.3d 1280, 1283-84 (10th Cir. 2005). Indeed, Mr. Masters was not arrested after the discovery of incriminating evidence. Consent is not rendered involuntary merely because Mr. Masters was told that if he refused consent, law enforcement would have to seek a search warrant, and the home's occupants would have to be removed to ensure no destruction of evidence.

AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.

- 7 -

Circuit Judge