**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 3, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

PEDRO CARBAJAL-IRIARTE,

Defendant - Appellant.

No. 08-2277

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. 1:07-CR-O2149-JAP-1)**

---

James Baiamonte, Albuquerque, New Mexico, for Defendant-Appellant.

David N. Williams, Assistant United States Attorney (Gregory J. Fouratt, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before **BRISCOE**, **McWILLIAMS**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I. Introduction

Pedro Carbajal-Iriarte was charged in a two-count indictment with conspiring to possess with the intent to distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. § 846, and possessing with the intent to distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). Carbajal-Iriarte moved to suppress evidence recovered from the vehicle he was driving on the grounds his consent was not voluntarily given and the officers exceeded the scope and duration of his consent. The district court denied the motion to suppress and a jury ultimately convicted Carbajal-Iriarte on both counts set out in the indictment. On appeal, he challenges the district court's refusal to suppress the drug evidence. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **AFFIRM** the district court's decision.

## II. Background

On October 9, 2007, DEA Special Agent Kevin Small and Detective Jeanette Tate of the Albuquerque Police Department were performing drug interdiction duties at the Sky City Casino Truck Stop approximately fifty miles west of Albuquerque, New Mexico. Wearing casual attire with their service weapons hidden beneath their clothing, the officers employed a strategy of approaching drivers with out-of-state plates, asking them to talk, and in some cases requesting consent to search their vehicles.

Just before 2:00 p.m., Carbajal-Iriarte and a juvenile arrived in a white van bearing California license plates. While Carbajal-Iriarte fueled his vehicle, Agent Small approached, displayed his badge, and asked whether Carbajal-Iriarte was willing to speak with him. Carbajal-Iriarte agreed. Their entire conversation was recorded.

Carbajal-Iriarte told Agent Small he lived in San Diego, but was coming to Albuquerque to find a less-expensive place to live. Upon request, Carbajal-Iriarte provided his license and registration, and Agent Small relayed the information to the El Paso Intelligence Center ("EPIC").[1] EPIC had no information on Carbajal-Iriarte, but did inform Agent Small that the van crossed the border into the United States the previous day at a port of entry east of San Diego. After speaking with EPIC, Agent Small returned Carbajal-Iriarte's documents.

Agent Small and Detective Tate soon recognized discrepancies between Carbajal-Iriarte's statements and those of his juvenile passenger. For instance, the juvenile claimed Carbajal-Iriarte was his father and said they were going to stay with the juvenile's uncle. Carbajal-Iriarte, however, told the officers they were looking for a new place to live and planned to stay in a motel. Carbajal-Iriarte also told Agent Small the van belonged to a friend, but he could not remember the friend's name.

---

[1]EPIC monitors travel and transport across United States borders and provides information to law enforcement agencies to assist with drug, weapon, and alien smuggling investigations.

Agent Small became suspicious and asked Carbajal-Iriarte for permission to search the vehicle. Carbajal-Iriarte responded, "You like to look, no problem." During this time frame, Carbajal-Iriarte entered the truck stop unaccompanied to pay for his gas. Despite a thorough search, the officers were not able to locate any drugs. Nonetheless, given the van's recent entry into the United States, Agent Small remained suspicious and believed Carbajal-Iriarte was transporting drugs in a hidden compartment. In an effort to confirm his belief, Agent Small made a number of phone calls to area law enforcement in an unsuccessful attempt to have a drug dog brought to the van.

Agent Small then asked Carbajal-Iriarte if he had a local phone number for his family in Albuquerque. Carbajal-Iriarte provided a number with a 915 area code, which is assigned to El Paso, Texas. When questioned about this discrepancy, Carbajal-Iriarte told Agent Small his family actually lived in Texas.

As his suspicions grew, Agent Small continued to contact other officers to determine whether any were available to assist. Because of his inability to locate a drug dog, Agent Small informed one of his fellow officers, "Actually, we have held the guy for awhile so probably what we are going to do is let him go." The officers took a different approach, however, when Detective Tate successfully contacted Officer Ruiloba, a dog handler with the Albuquerque Police Department who was willing to meet them after he finished work at a nearby crime lab. Agent Small separately coordinated with Officer Nick Ramos of the New Mexico

-4-

State Police, who had an expertise in finding hidden compartments, to conduct a second search of the vehicle until the drug dog could arrive.

Agent Small asked Carbajal-Iriarte if he would be willing to drive toward Albuquerque to meet other officers so they could conduct a more thorough search of the vehicle. Carbajal-Iriarte stated, "I don't have a problem with it," but told Agent Small he would like to use the restroom first. Agent Small did not object, but told Carbajal-Iriarte that once he was finished, Agent Small follow him onto the highway and "[w]hen we find our officer, I will turn on my lights and let you know." The length of this initial encounter, including the first search of the van, was approximately fifty minutes. Carbajal-Iriarte then made an unescorted restroom visit lasting twenty minutes, after which he and the officers left the truck stop.

Agent Small and Detective Tate followed Carbajal-Iriarte and the juvenile east along Interstate 40 toward Albuquerque for approximately twenty miles. According to Agent Small, Carbajal-Iriarte "only drove highway speeds. He drove 60 miles an hour, which is, this day and age, very slow, but we stayed behind him." Once they came upon Officer Ramos in the median, Agent Small and Detective Tate turned on their emergency lights, and Carbajal-Iriarte and the officers pulled their vehicles onto the side of the road. Agent Small then asked Carbajal-Iriarte again whether the officers could conduct a second search of his

vehicle.  Carbajal held out his hand, pointed at the van, and indicated the officers could search the vehicle.[2]

The officers conducted another search, but still found no sign of drugs. One hour and nine minutes after the vehicles stopped on the highway, Officer Ruiloba arrived with a drug dog.  A few minutes later, the dog alerted to the back seat of the van.  When the officers cut open the seat, they discovered twelve bundles of methamphetamine.

Carbajal-Iriarte was indicted for conspiring to possess with intent to distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. § 846, and possessing with intent to distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A).  Carbajal-Iriarte filed a motion to suppress the methamphetamine recovered from the van, which the district court denied.  Carbajal-Iriarte was ultimately convicted of both counts.  He now appeals the denial of his motion to suppress.

## III.  Discussion

Carbajal-Iriarte asserts the district court erred in denying his motion to suppress because his consent was not voluntary and the search went beyond the scope and duration of his consent.  In considering a district court's denial of a motion to suppress, this court reviews factual findings for clear error, viewing the

---

[2]The officers' interactions with Carbajal-Iriarte alongside the highway were videotaped, but no sound was recorded.

evidence in the light most favorable to the government, and reviews legal conclusions de novo. *United States v. Grimmett*, 439 F.3d 1263, 1268 (10th Cir. 2006).

### A. Voluntariness of Consent

Whether a defendant's consent to search his vehicle was voluntary is a question of fact, and the court considers the totality of the circumstances in making this determination. *United States v. Dozal*, 173 F.3d 787, 795 (10th Cir. 1999). The government bears the burden of proof on this issue, and "must show that there was no duress or coercion, express or implied, that the consent was unequivocal and specific, and that it was freely and intelligently given." *United States v. Soto*, 988 F.2d 1548, 1557 (10th Cir. 1993).

Carbajal-Iriarte argues his consent to each search was not voluntary because Agent Small never informed him he could refuse. Additionally, Carbajal-Iriarte claims he felt he had no choice but to comply with Agent Small's request to let other officers search the van alongside Interstate 40. In support of this claim, he notes he asked permission to use the bathroom and drove at an "unusually slow" rate of speed when going to meet Officer Ramos.

None of the facts referenced by Carbajal-Iriarte are sufficient to establish the district court clearly erred in finding he voluntarily consented to the multiple searches of his vehicle. The Supreme Court has held that a defendant's consent to a search may be voluntary even when the consenting party was not informed he

could refuse. *Schneckloth v. Bustamonte*, 412 U.S. 218, 249 (1973). Thus, the mere fact Agent Small did not specifically tell Carbajal-Iriarte that he was allowed to decline the request does not render the consent involuntary.

Furthermore, there is nothing in the record to suggest Carbajal-Iriarte's initial consent to search the vehicle at the truck stop was involuntary. The record reveals Agent Small and Detective Tate approached him in a public place, identified themselves as police officers, were courteous and polite, were not uniformed, never displayed their service weapons, and did not restrict his movement. Carbajal-Iriarte's unequivocal statement, "You like to look, no problem," was not preceded by any coercive police conduct that would suggest Carbajal-Iriarte's consent was involuntary.

Additionally, Carbajal-Iriarte's consent to drive twenty miles along Interstate 40 to meet Officer Ramos for a second search was voluntary. When asked whether he was willing to go with Agent Small and Detective Tate to a separate location for a more thorough search, Carbajal-Iriarte replied without hesitation, "I don't have a problem with it." Again, none of the circumstances surrounding this second consent are coercive. Carbajal-Iriarte's suggestion that his request to use the bathroom and his "unusually slow" driving indicate he did not feel free to decline the officer's request is unavailing because these facts, in light of the totality of the circumstances, are insufficient to demonstrate the district court's findings were clearly erroneous.

Carbajal-Iriarte argues this case is factually similar to *United States v. Gonzales*, 763 F.2d 1127 (10th Cir. 1985). There, this court determined the defendant's consent to follow the officer to the police station was involuntarily given. *Id.* at 1132. In *Gonzales*, however, the circumstances were coercive because the officer held the defendant's driver's license, car registration, and title at the time of his request. *Id.* As a result, the court concluded the "defendant had no reasonable choice other than to accompany the officer no matter how polite the officer was in phrasing his request." *Id.*

In contrast, the district court here found Agent Small returned Carbajal-Iriarte's license and registration prior to the initial search, long before asking Carbajal-Iriarte to drive toward Albuquerque to meet Officer Ramos. There is nothing in the record to indicate this finding was clearly erroneous. Consequently, *Gonzales* is inapposite. Absent any indication to the contrary, this court concludes the district court did not clearly err in finding that Carbajal-Iriarte's consent to travel twenty miles for a second search was voluntary.

Carbajal-Iriarte's consent to search after meeting Officer Ramos along the highway was also voluntary. Upon arrival, Agent Small again asked Carbajal-Iriarte whether he would mind if the officers conducted a second search of the van. In light of the videotape, the district court found Carbajal-Iriarte held out his hand indicating his consent. Carbajal-Iriarte argues his consent was not voluntary because the officers followed him closely on the highway and activated

their emergency lights upon approaching Officer Ramos. He claims no reasonable person would feel free to ignore a law enforcement officer under these circumstances. Viewing the evidence in the light most favorable to the government, however, Agent Small's activation of his emergency lights merely alerted Carbajal-Iriarte that they had reached their destination. Indeed, before they left the truck stop, Agent Small informed Carbajal-Iriarte he would use this signal. Given that Carbajal-Iriarte freely consented to meet Officer Ramos, this court cannot conclude Agent Small's pre-arranged use of his emergency lights under these circumstances made the situation coercive. Accordingly, the court concludes the district court did not clearly err in finding Carbajal-Iriarte's reiteration of his consent to search alongside the highway was voluntary.

To the extent Carbajal-Iriarte suggests his consent was the product of an unlawful detention, we agree with the district court that Carbajal-Iriarte's encounter with Agent Small was consensual rather than a seizure. An individual's encounter with law enforcement is consensual if "a reasonable person would feel free to disregard the police and go about his business." *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (quotations omitted). Again, the court looks to the totality of the circumstances surrounding the encounter itself, including:

> the location of the encounter . . . ; whether the officers touch or
> physically restrain the defendant; whether the officers are uniformed
> or in plain clothes; whether their weapons are displayed; the number,
> demeanor and tone of voice of the officers; whether and for how long
> the officers retain the defendant's personal effects such as tickets or

identification; and whether or not they have specifically advised defendant at any time that he had the right to terminate the encounter or refuse consent.

*United States v. Thompson*, 546 F.3d 1223, 1226 (10th Cir. 2008) (quotation omitted).

Carbajal-Iriarte's primary argument that the encounter was not consensual stems from Agent Small's statement to another officer on his cell phone that "we have held the guy for awhile so probably what we are going to do is let him go." But Agent Small's characterization of the situation to a third party is not dispositive. Rather, the inquiry focuses on the objective viewpoint of one in the defendant's circumstances. *Bostick*, 501 U.S. at 434. Carbajal-Iriarte points to nothing in the record indicating he was aware of Agent Small's statement, and the officers' interactions with him at the truck stop bear all the hallmarks of a consensual encounter.

As explained above, Carbajal-Iriarte repeatedly consented to the officers' searches during the course of the consensual encounter. Under these circumstances, Carbajal-Iriarte has provided this court with no reason to conclude the district court clearly erred in finding he freely consented to the searches.

## B. *Duration of the Search*

Carbajal-Iriarte next challenges the duration of the search. Whether the search exceeded the duration of the defendant's consent is a question of fact, which this court reviews for clear error. *United States v. Rosborough*, 366 F.3d

1145, 1150 (10th Cir. 2004). There is no absolute rule specifying the permissible duration of a search performed with the defendant's consent. Rather, the court asks "what a reasonable person would have understood to be the scope and duration of his consent under the circumstances." *Id.*

*Rosborough* is instructive. There, the defendant and his cousin were pulled over for speeding and were given a written warning. *Id.* at 1147. After the warning was issued, the defendant agreed to answer further questions and ultimately consented to a general search of the vehicle, which "was confined by neither time nor location." *Id.* at 1147, 1151. During the search, the officer detected an odor he believed was being used to mask the scent of drugs. *Id.* at 1147. This prompted the officer to call for a canine unit, which arrived forty-five minutes into the search. *Id.* Soon after, the drug dog alerted toward the front passenger area. *Id.* at 1148. At that point, the defendant and his cousin attempted to revoke their consent to the search, but because a canine's positive alert creates general probable cause to search a vehicle, the officers continued their search and ultimately located thirty pounds of cocaine hidden in the trunk. *Id.* at 1148, 1153.

Rosborough sought suppression of the cocaine on the grounds that the portion of the search prior to the canine alert, which lasted just under an hour, exceeded the duration of his consent. This court affirmed the district court's denial of the motion to suppress because Rosborough's general consent "was

confined by neither time nor location" and the officers acted with diligence in conducting the search. *Id.* at 1151.

Likewise, the search here did not exceed the duration of Carbajal-Iriarte's consent. Carbajal-Iriarte characterizes the search as occurring in two different locations over a span of two hours. This description ignores the multiple consents to search given by Carbajal-Iriarte. That Carbajal-Iriarte repeatedly consented to these searches favors the conclusion that the duration of the search was reasonable. *See id.* at 1151-52. The first search at the truck stop lasted approximately half an hour, after which Carbajal-Iriarte agreed to go with Agent Small and Detective Tate to meet Officer Ramos for a second search. After arriving at Officer Ramos's location along Interstate 40, Carbajal-Iriarte reaffirmed his consent for the search. From the time of Carbajal-Iriarte's last consent, the search lasted just over an hour, only slightly longer than the search at issue in *Rosborough*. Once Officer Ruiloba arrived with the drug dog, the dog alerted to the presence of methamphetamine within a matter of minutes.

A variety of other facts also support the district court's findings. Carbajal-Iriarte's consent contained no limitation on the duration of the search and can only be described as giving the officers general permission to search the vehicle. At no time did Carbajal-Iriarte seek to limit the duration of the search, nor did the officers create the understanding that the search would be brief. It is also noteworthy that Carbajal-Iriarte's last consent was provided after voluntarily

-13-

traveling to meet another officer for the express purpose of a search, as opposed to the search in *Rosborough*, which stemmed from a traffic stop. Finally, there is no indication, and Carbajal-Iriarte does not argue, that the officers failed to act with due diligence in conducting the search.

In light of all of these circumstances, the district court's finding that the search was of a duration permitted by Carbajal-Iriarte's consent was not clearly erroneous.

*C. Scope of Consent*

Carbajal-Iriarte also argues the officers exceeded the scope of his consent when they cut open the upholstery of the van seat. He argues voluntary consent does not include consent to destroy the defendant's property in the course of the search. *See United States v. Osage*, 235 F.3d 518, 521-22 (10th Cir. 2000); *United States v. Strickland*, 902 F.2d 937, 942 (10th Cir. 1990). *Osage*, however, held only that an officer may not "destroy or render completely useless a container which would otherwise be within the scope of a permissive search" based on general consent alone, but must instead either "obtain explicit authorization, *or have some other, lawful, basis upon which to proceed*." 235 F.3d at 522 (emphasis added). Likewise, *Strickland* held that even though the defendant's consent did not authorize the officers to cut open his spare tire, the search was nonetheless permissible because the officers obtained probable cause

to search the tire during the portion of the search to which the defendant did consent. 902 F.2d at 941-43.

Here, the officers had an independent legal basis upon which to proceed because the dog's positive alert to the presence of drugs in the van provided probable cause. *See United States v. Ludwig*, 10 F.3d 1523, 1527-28 (10th Cir. 1993). As a result, it is immaterial whether Carbajal-Iriarte consented to cutting open the seat. Once the officers had probable cause to search the seat, his consent was no longer necessary. Accordingly, the district court did not err in refusing to suppress the drugs recovered from the seat.

*D. Other Arguments*

Finally, Carbajal-Iriarte makes a variety of arguments regarding the need to apply the exclusionary rule in this case, due to Agent Small's conduct, under the Supreme Court's recent decision in *Herring v. United States*, 129 S. Ct. 695 (2009). Without the presence of a Fourth Amendment violation, however, this court need not undertake the further inquiry of whether Agent Small's conduct warrants application of the exclusionary rule.

**IV. Conclusion**

Because the district court did not clearly err in finding that Carbajal-Iriarte's consent was voluntary or that the searches were within the duration and scope of his consent, the decision of the district court is hereby **AFFIRMED**.

-15-