**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Joseph Anthony COLATRIANO and Robert Edward Goodwin, Defendants-Appellants.**

**No. 79-5544.**

United States Court of Appeals, Fifth Circuit.

Aug. 21, 1980.

James C. Carr, Jr., Atlanta, Ga. (Court-Appointed), for Goodwin.

Thomas C. Bianco, Atlanta, Ga. (Court-Appointed), for Colatriano.

Robert L. Ridley, Atlanta, Ga., for defendants-appellants.

William L. Harper, U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before TUTTLE, VANCE and POLITZ, Circuit Judges.

TUTTLE, Circuit Judge:

This case involves appeals by two defendants who were convicted in the district court for the Northern District of Georgia of assault and carrying a deadly weapon while incarcerated in the federal penitentiary. We affirm the convictions.

On December 13, 1978, Lorman Edmonds, an inmate at the Atlanta Federal Penitentiary, was resting in his cell recovering from minor surgery, when he was attacked and stabbed. Edmonds ran from the cell in the direction of the prison hospital. Prison officials were alerted and officials and inmates began to converge on the cell block where Edmond's cell was located. One of the officers approached defendant Joseph Anthony Colatriano. Defendant Robert Edward Goodwin restrained the officer and Colatriano ran from the cell block to the level below, where he was apprehended.

Goodwin and Colatriano were indicted in a five count indictment returned on May 22, 1979. Goodwin was indicted in Count One for assault on an inmate, in Count Two for conveying a knife within the penitentiary, and in Count Five for impeding a correctional employee. Colatriano was charged in Count Three with assaulting a correctional employee and in Count Four with conveying a knife within the institution. At trial, the government presented evidence to prove that, on December 13, 1978, Goodwin entered Edmond's cell and, stabbed him, while Colatriano stood guard outside the cell. Prison officials testified that, upon their arrival at the cell block, Goodwin and Colatriano fled. One of the officers grabbed Colatriano, who pulled out a knife and attempted to dispose of it by pushing it through the mesh screen along the side of the hallway. At that point, Goodwin restrained the officer while Colatriano fled. Colatriano was apprehended on a lower level. No weapons were found when he was

searched; however, a knife was found in another area of the cell block. The knife was marked with a piece of tape. As part of its evidence, the government introduced a roll of tape which was found in Goodwin's belongings when he was transferred to a segregated area after the incident. The roll of tape was offered to be compared with the tape on the knife that was found in the hallway, and thus to prove that the knife was Goodwin's.

After the jury retired to consider the evidence, they sent two notes to the court, one requesting clarification of the jury verdict form,[1] and another requesting clarification of the word "assault."[2] The court called the jury back and responded to the two questions. Counsel for defendants requested that the court, in issuing the supplemental charge, reinstruct the jury on presumption of innocence and burden of proof. The court declined to reinstruct the jury. A verdict of guilty on all counts was returned.

The defendants assert that the trial court erred in three respects. Defendant Colatriano contends that the court improperly denied his motion for severance. Both defendants assert error in the trial court's admission of the roll of tape as evidence and in the court's refusal to reinstruct the jury concerning burden of proof and presumption of innocence.

### Severance

■ Colatriano maintains that his trial with Goodwin was inherently prejudicial because evidence was presented to show his commission of a crime for which he was not being tried. Although Goodwin alone was charged with assaulting Edmonds, the government introduced evidence to indicate that Colatriano stood guard while Goodwin assaulted Edmonds. Colatriano argues that the effect of this evidence was to deny him a fair trial by implicating him in a charge for which he was not indicted.

Rule 8 of the Federal Rules of Criminal Procedure allows joinder of defendants "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Furthermore, "all of the defendants need not be charged in each count." *Id.* In the instant case, a single continuous transaction gave rise to all five counts of the indictment. Under these circumstances, joinder of Goodwin and Colatriano was proper. *See United States v. Laca*, 499 F.2d 922, 925 (5th Cir. 1974). Nor do we find that joinder unduly prejudiced Colatriano, requiring severance under rule 14.[3] Evidence of the manner in which the incident was initiated was a necessary part of the government's proof of the charge that Colatriano was guilty of transporting a knife from place to place within the prison. In addition, the possibility of jury confusion was adequately cured by the trial court's specific instruction to the jury that defendant Colatriano was not charged with the offense of assaulting an inmate. We perceive no abuse of the trial court's discretion in its refusal to grant severance. *See United States v. Hamilton*, 492 F.2d 1110 (5th Cir. 1974).

1. The note read:
   "Please clarify Count # 1 as cited on Jury verdict form:
   (a) Should the words 'Deadly Weapon' appear in (1).
   (b) Is there substantial difference between (1) and (2)."

2. The note read:
   "(1) We would like a clarification of the word 'assault' as it appears on Count 3 of the charges against Joseph Colatriano.
   (2) We need to review the testimony of Officer Wood and Officer Phillips regarding specifically the confrontation with Colatriano on range 8."

3. Fed.R.Crim.P. 14 provides:
   If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.

### Admission of the Roll of Tape

■ When an inmate is transferred to segregated confinement, his belongings are picked up by a prison official, marked, and taken to the property room. Goodwin's belongings, including a roll of tape, were found in the property room after Goodwin was transferred from his cell block. According to the testimony of the government's expert, the roll of tape matched the tape on the knife which was found in the hallway. Prior to introducing the tape into evidence, the government presented testimony that it is the normal practice in the penitentiary, when a prisoner is transferred to a segregated unit, for an officer to remove the prisoner's belongings from his cell, mark them, and place them in the segregation property room. He also testified that the roll of tape was removed from the belongings in the property room marked as Goodwin's.

The defendants assert that the tape should not have been admitted into evidence because the government failed to present evidence to establish that an officer picked up the property in Goodwin's room, marked it, and placed it in the property room. They contend that a break in the chain of custody renders physical evidence inadmissible.

"It is well settled that whether the government has proved an adequate chain of custody goes to the weight rather than the admissibility of the evidence." *United States v. Henderson,* 588 F.2d 157, 160 (5th Cir.), *cert. denied,* 440 U.S. 975, 99 S.Ct. 1544, 59 L.Ed.2d 794 (1979); *see United States v. White,* 569 F.2d 263, 266 (5th Cir.), *cert. denied,* 439 U.S. 848, 99 S.Ct. 148, 58

L.Ed.2d 149 (1978). The evidence was properly admitted.

### Supplemental Instruction

Before the jury retired to consider the evidence in this case, the trial court fully instructed the jury regarding the elements of the offenses charged, the government's burden of proof, and the presumption of innocence. After some consideration, the jury asked that the court clarify two points. First, the jury inquired whether the words "deadly weapon" should appear in the verdict form for part (1) of Count One, and whether there was a difference between part (1), assault resulting in serious bodily injury, and part (2), the lesser included offense of assault with a deadly weapon with intent to do bodily harm. The court responded that the words deadly weapon should not appear in part (1), and explained the difference between the two offenses:

> The first offense of assault resulting in a serious bodily injury may result from an assault with or without a deadly weapon.

> The lesser included offense of assault with a dangerous weapon with intent to do bodily harm and without cause or excuse must be an assault with an intent to do bodily harm with a dangerous weapon and without cause or excuse. However, it would not be necessary under that count to show that there was a serious bodily injury.

Second, the jury asked that the court clarify the word "assault" in Count Three.[4] The court responded by reading to the jury the words of the statute dealing with assault.[5]

4. Count Three charged that
   on or about the 13th day of December, 1979, within the Northern District of Georgia, the defendant, Joseph Anthony Colatriano, did forcibly assault, resist, oppose, impede, intimidate and interfere with Charles A. Wood, an employee of the United States Penitentiary, Atlanta, Georgia, who was then and there engaged in and on account of the performance of his official duties at said institution.

5. The court stated:
   First, let me define the term "assault." Any willful attempt or threat to inflict injury

upon the person of another, where coupled with an apparent ability so to do, and any intentional display of force such as would give the victim reason to fear or expect immediate bodily harm constitutes an assault.

Now, Count Three of the indictment charges Mr. Colatriano with a forcible assault through the use of a deadly or a dangerous weapon, and I instructed you that there was a lesser included offense without the use of a dangerous weapon.

In the verdict form that I prepared for you I do not remember if I used the term forcible assault. However, the statute provides that

The defendants maintain that this court's decision in *United States v. Meadows*, 598 F.2d 984 (5th Cir. 1979) requires reversal for the trial court's failure, upon issuing the supplemental instructions, to recharge the jury concerning presumption of innocence and burden of proof. We do not agree with this reading of *Meadows*. In that case, the court gave a proper instruction of the elements of fraud. After deliberating for several hours, the jury requested a further definition of fraud, and the court responded with a definition of fraud which omitted any reference to intent. The court held that understatement of the fundamental issue in the case was highly prejudicial and required reversal. The court also noted that the trial court's supplemental instruction made no reference to the burden of proof or presumption of innocence. Noting that a court must be careful, in giving supplemental instructions not to give an unbalanced charge, the court stated:

> While in this case, we would hesitate to reverse the judgment for the failure to recharge with respect to the presumption of innocence and the burden of proof; on retrial, if the court chooses to give any additional charge and quite reasonably elects not to repeat the entire original charge, the court could simply remind the jury of the burden and quantum of proof and presumption of innocence, or state that all instructions must be considered as a whole, or take some appropriate steps to avoid the possibility of prejudice to the defendant. The procedure will provide a minimum of balance without any undue burden.

*Id.* at 990.

*Meadows* does not, as the defendants contend, require automatic reversal for failure to reinstruct the jury. Rather, the trial court's actions must be evaluated in light of the totality of the circumstances, considering the complete instructions given to the jury. *See Kentucky v. Whorton*, 441 U.S. 786, 789, 99 S.Ct. 2088, 2089, 60 L.Ed.2d 640 (1979); *United States v. McLaurn*, 580 F.2d 811, 812 (5th Cir. 1978). We find no reversible error in this case. The trial court's initial instructions discussed clearly and in detail the government's burden of proof and the presumption of innocence. The supplementary instructions were brief, addressing only the neutral questions presented by the jury. Under these circumstances, failure to recharge did not result in a prejudicial unbalanced charge.

The case is AFFIRMED.

---

whoever forcibly assaults, resists, opposes, impedes, intimidates or interferes with any federal officer or employee designated in Section 1114 of this title while engaged in or on account of the performance of his official duties shall be guilty of an offense against the United States.

The same provision of the law further provides that whoever in the commission of any such acts uses a deadly or dangerous weapon shall be punished as provided by law.

I simply read you the statute so that you would see where the term forcible assault comes from.

The term forcible assault means any willful attempt or threat to inflict injury upon someone else when coupled with an apparent present ability to do so and includes any intentional display of force that would give a reasonable person cause to expect immediate bodily harm even though the threat or attempt is not actually carried out and the victim is not actually injured.