IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 8, 2007

Charles R. Fulbruge III
Clerk

No. 06-50259

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

MOISES ESCARENO SANCHEZ

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas

Before JONES, Chief Judge, and STEWART[*] and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Moises Escareno Sanchez ("Sanchez") appeals his conviction for possession of cocaine with the intent to distribute, arguing that the district court erred when it denied his motion to suppress evidence of the cocaine and refused to instruct the jury a second time regarding the government's burden of proof. Sanchez also appeals his sentence, arguing that it is unreasonable. For the following reasons, we AFFIRM.

I. FACTS AND PROCEEDINGS

---

[*] Judge Stewart concurs in the judgment only.

On May 26, 2004, Texas Department of Public Safety ("DPS") Trooper Michael Turk ("Turk") patrolled Interstate Highway 10 ("I-10") in Gonzales County, Texas. At approximately 2:30 p.m., Turk, an eight-year veteran of the DPS, observed a 1972 white pickup truck with Mexican license plates switch lanes and overtake a commercial truck. Turk "paced" the pickup truck, meaning that he followed at the same distance behind the truck to determine its speed. During that time, Turk manually activated his DPS vehicle's camera. He determined that the truck was speeding at 74 miles per hour, in excess of the posted speed limit.

Turk pulled the truck over for a speeding violation and turned the volume control on for the videotape recorder. He approached the vehicle and asked the driver, Sanchez, to exit the truck for safety reasons because it was parked too close to the highway. He asked Sanchez for his driver's license and proof of insurance. Turk noticed that the truck's wheels, rims, and lug nuts had been freshly painted, which made him suspicious because, in his experience, drug smugglers painted wheels of vehicles to mask tampering of the tires and wheel rims. He also noticed that the tires were oversized for the truck, and he had encountered drug smugglers who hid drugs in a vehicle's tires.

Sanchez spoke very little English, and Turk spoke little Spanish, which hindered the conversation between the two. During their brief exchange regarding the purpose of Sanchez's trip to the United States, Sanchez told Turk that he and his wife, who was sitting in the truck, were making a one-day trip to Houston, Texas from Monterey, Mexico to shop for spare parts for washing machines. Sanchez's wife told Turk the same when asked. After visually inspecting the outside of the truck and the cab area, Turk noted that the couple had no bags or luggage of any kind, an odd fact considering that the distance from Monterey to Houston was approximately 500 miles, the time was already late afternoon, and yet the couple stated they had no plans to spend the night

anywhere. Turk also noticed during their conversation that Sanchez's lips and facial muscles quivered and that he appeared "overly nervous."

In light of these circumstances and the fact that Turk knew through experience that I-10 to Houston was a common drug-trafficking route, he asked Sanchez if he was transporting any drugs or contraband. When Sanchez denied transporting drugs, Turk asked if he would consent to a search of the truck. Sanchez agreed. The time that elapsed between the moment Turk pulled Sanchez over for the speeding violation and the moment Sanchez consented to the search was five minutes.

Turk searched the truck, which included looking under the hood of the truck, thumping the body of the truck to look for compartments, searching the cab, thumping the tires, and checking the wheel wells. He heard a "solid, tight sound" when he thumped the tires, and he noticed that the wheels had extra weights attached to them. His experience told him to suspect the possibility of contraband hidden in the tires, which would cause the sound that he heard after thumping the tires and would also cause an imbalance in the wheels when in motion so that added weights would be necessary to prevent the truck from shimmying. He asked Sanchez to follow him to a nearby garage so that further inspection of the truck could be conducted. Sanchez agreed. Once the mechanics removed the tires, they discovered approximately sixty-five pounds of cocaine located in compartments built into the wheel rims.

Sanchez was charged with one count of possession of cocaine with the intent to distribute. He moved to suppress the cocaine, but the district court denied the motion after an evidentiary hearing. During closing arguments, Sanchez's counsel raised a "blind mule" defense, arguing that Sanchez had unknowingly transported drugs into the United States. During deliberations, the jury sent two notes to the judge, requesting additional information regarding Sanchez's ownership and control of the truck and tires. The judge instructed the

jury that the time to submit evidence in the trial had closed. After the delivery of each note, Sanchez asked the judge to remind the jury of the government's burden of proof and of the presumption of innocence. Both requests were denied. The jury convicted Sanchez.

The presentence investigation report by the U.S. probation officer recommended a sentencing range of 151 to 188 months, as calculated by the Sentencing Guidelines. Sanchez requested a downward departure to 120 months. The judge found that the Guidelines range was fair and reasonable and sentenced Sanchez to 151 months of incarceration. Sanchez appealed, arguing that it was error to deny his motion to suppress the cocaine. Sanchez contended that because Turk did not have reasonable suspicion to detain him after the initial traffic stop, the cocaine seized was the fruit of an illegal detention. Sanchez also appealed the denial of his request to instruct the jury a second time regarding the burden of proof and challenged the reasonableness of his sentence.

## II. STANDARD OF REVIEW

To assess whether Turk had reasonable suspicion to detain Sanchez for approximately five minutes, we review the district court's factual findings for clear error and its determination of reasonable suspicion de novo. United States v. Estrada, 459 F.3d 627, 630 (5th Cir. 2006). We view the evidence considered at the suppression hearing and all inferences drawn therefrom, in the light most favorable to the prevailing party. Id.; United States v. Munoz, 957 F.2d 171, 173 (5th Cir. 1992). This Court may also consider the evidence presented during trial in our review of the ruling on the motion to suppress. United States v. Maldonado, 472 F.3d 388, 392 (5th Cir. 2006).

We review the instructions to the jury for abuse of discretion. Cooper Indus., Inc. v. Tarmac Roofing Sys., Inc., 276 F.3d 704, 714 (5th Cir. 2002). Finally, all sentences after United States v. Booker, 543 U.S. 220 (2005), are

ultimately reviewed for unreasonableness. United States v. Smith, 440 F.3d 704, 706 (5th Cir. 2006).

## III.  DISCUSSION

A.    Motion To Suppress the Evidence of Cocaine

A routine traffic stop is a limited seizure closely resembling an investigative detention and is analyzed within the framework established by the Supreme Court in Terry v. Ohio, 392 U.S. 1 (1968).  See Estrada, 459 F.3d at 630. "Once the purpose of a valid traffic stop has been completed and an officer's initial suspicions have been verified or dispelled, the detention must end unless there is additional reasonable suspicion supported by articulable facts."  Id. at 631.  Reasonable suspicion is present "when the detaining officer can point to specific and articulable facts that, when taken together with rational inferences from those facts, reasonably warrant continued detention."  Id.  To determine whether reasonable suspicion has been developed, courts must examine the totality of the circumstances, including the collective knowledge and experience levels of the officers involved.  Id. at 631–32.  "Courts must allow law enforcement officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person."  Id. at 632 (internal quotations omitted).

Sanchez does not contest the validity of the initial traffic stop, nor does he challenge the voluntariness of his consent to the search of his truck; rather, he contends that, once the purpose for the initial stop was satisfied, Turk did not have reasonable suspicion to detain him for an additional five-minute period between the initial stop and the point at which he consented to the search.  The government argues that at the outset of the valid traffic stop, Turk became aware of circumstances that gave rise to reasonable suspicion warranting further detention.  We agree.

Turk, who had eight years of experience in the field, immediately noticed that the wheel rims on Sanchez's truck had been painted after he pulled the truck over.[1]  In his testimony at the trial, he stated that he knew that drug traffickers often paint their wheel rims to hide marks stemming from alterations they make to tires and rims to conceal contraband.  As an experienced officer in the Houston area, he also understood that I-10 is a common trafficking route for drugs originating in Mexico.  These facts, added to the facts that the tires were oversized for the vehicle, Sanchez was visibly nervous, and he did not appear to have any supplies or luggage for a 1000-mile round-trip from Mexico to Houston, support a finding that the officer had reasonable suspicion to continue to detain Sanchez while he investigated further.  After he answered negatively to the question of whether or not he was transporting drugs, Sanchez consented to a search of his vehicle and he later consented to follow the officer to a garage so that the officer could perform a more detailed search of the truck and the tires.

The Supreme Court has held that the "touchstone of the Fourth Amendment is reasonableness," and "[r]easonableness, in turn, is measured in objective terms by examining the totality of the circumstances."  Ohio v. Robinette, 519 U.S. 33, 39 (1996) (internal quotations omitted).  Given the totality of the circumstances, we find Turk's actions to be reasonable.  Therefore, the district court did not err in denying the motion to suppress the evidence.

B.  The Instructions to the Jury

At the close of the trial, the district court provided oral and written instructions to the jury regarding the elements of the charge, the presumption of innocence, and the government's burden of proof.  During deliberations, the jury sent two notes to the judge, asking him questions of fact about Sanchez's

---

[1] Turk stated this fact in his testimony at the trial.  Additionally, the videotape of the traffic stop shows Turk looking directly at the tires as he initially approached the side of the truck to ask Sanchez to exit the truck and later when Turk questioned Sanchez's wife regarding their travel plans.

truck and tires. The judge refused to answer these questions and told the jury that the time to provide evidence during the trial had ended and that no further entry of evidence was permitted.[2] The jury did not ask questions of law. Afterward, the judge refused Sanchez's requests to instruct the jury again on the government's burden of proof.

Sanchez relies on our decision in United States v. Meadows, 598 F.2d 984 (5th Cir. 1979), to argue that the judge was obligated to recharge the jury and, therefore, he committed reversible error when he failed to do so. We stated then: "It is well-established that in giving additional instructions to a jury; particularly in response to inquiries from the jury, a court must be especially careful not to give an unbalanced charge." Id. at 990. But in United States v. Colatriano, 624 F.2d 686, 690 (5th Cir. 1980), we explained that Meadows does not support the contention that convictions must be automatically reversed when a trial court fails to recharge the jury. "Rather, the trial court's actions must be evaluated in light of the totality of the circumstances, considering the complete instructions given to the jury." Id.

In Meadows, the jury asked for clarification on the elements of the charges against the defendants. 598 F.2d at 989–90. The judge repeated a small portion of his initial instruction regarding the charge, but failed to reference the government's burden of proof or the presumption of innocence. Id. at 989. We reversed based upon the imbalance of the supplemental instruction. Here, the judge initially gave thorough, balanced instructions regarding the presumption of innocence and the government's burden of proof to the jury both orally and in

---

[2] The first question from the jury to the judge read: "We would like to know how long Mr. Sanchez has owned his truck. We would like to know when the new tires were purchased. We would like to know where the tires were purchased, USA or Mexico." The judge responded: "Dear jury, thank you for these questions. However, I cannot answer any of them because the case is closed and no further evidence can be presented." The second note sent from the jury asked: "We would like to know if the tire in Government's Exhibit number 3 is from Mr. Sanchez's truck?" The judge answered that the evidence did not identify the tire.

writing, and he gave no supplemental instruction to the jury to clarify questions of law. Under these circumstances, the district court's decision not to recharge did not result in a prejudicial unbalanced charge. See Colatriano, 624 F.2d at 690. Therefore, we find no reversible error.

C.     The Reasonableness of Sanchez's Sentence

The Supreme Court has directed us to review Sanchez's sentence for "reasonableness," guided by the sentencing factors listed in 18 U.S.C. § 3553(a).[3] United States v. Booker, 543 U.S. 220, 261–62 (2005). In United States v. Mares, the first sentencing decision rendered by this Court after Booker, we established that a presumption of reasonableness exists for sentences falling within the range advised by the Guidelines. 402 F.3d 511, 519 (5th Cir. 2005).

> If the sentencing judge exercises her discretion to impose a sentence within a properly calculated Guideline range, in our reasonableness review we will infer that the judge has considered all the factors for a fair sentence set forth in the Guidelines. Given the deference due the sentencing judge's discretion under [Booker], it will be rare for a reviewing court to say such a sentence is "unreasonable."

Id. The Supreme Court recently affirmed this position by holding that courts of appeals are permitted to adopt a presumption of reasonableness when reviewing federal sentences within properly calculated Guidelines ranges. See Rita v. United States, 127 S. Ct. 2456, 2465 (2007).

---

[3] The factors to be considering when imposing a sentence include, in part:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
>    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B) to afford adequate deterrence to criminal conduct;
>    (C) to protect the public from further crimes of the defendant; and
>    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

18 U.S.C. § 3553(a)(1)-(2).

Sanchez challenges the reasonableness of his sentence, even though it fell within the recommended Guidelines range. Recognizing that the presumption of reasonableness for sentences falling with the Guidelines only extends to appellate courts, see id., Sanchez argues that the judge relied exclusively on the Guidelines calculation when he determined the sentence and did not consider other factors listed in § 3553(a). Specifically, Sanchez contends that the judge did not consider whether "the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply, . . . [whether] the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or . . . [whether] the case warrants a different sentence regardless." Id.

The judge calculated Sanchez's sentence using the Guidelines and determined that the recommended sentence fell in the range of 151–188 months. Sanchez requested a 120-month sentence, noting the fact that he was fifty years old and that he had no prior criminal history and arguing that such a sentence would accomplish Congress's sentencing goal of deterrence. Sanchez was sentenced to 151 months incarceration, the lowest end of the Guidelines range. At sentencing, the judge noted the length of the sentence and indicated that he considered Sanchez's age in sentencing, but qualified these considerations by finding the recommended sentence to be "appropriate and reasonable." The district court's statement of reasons also indicated that the objectives of deterrence, punishment, and incapacitation listed in § 3553(a) were considered in determining the sentence.

Sanchez argues that the law requires more evidence of the rationale than a bare statement of reasons. But "when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." Booker, 543 U.S. at 233. Here, the statement of reasons was "brief but legally sufficient." Rita, 127 S. Ct. at 2469. The record is clear that the judge listened to and

considered the mitigating factors that Sanchez raised and also took into account Congress's objectives listed in § 3553(a).  The judge simply found that a sentence within the range recommended by the Guidelines was warranted.  "Where a matter is as conceptually simple as in the case at hand and the record makes clear that the sentencing judge considered the evidence and arguments, we do not believe the law requires the judge to write more extensively."  Id.  We do not find the sentence imposed by the district court to be unreasonable.

## IV.  CONCLUSION

The judgment of the district court is AFFIRMED.