STATE OF MAINE                                    UNIFIED CRIMINAL DOCKET
CUMBERLAND, ss.                                        No. CR-16-3494

STATE OF MAINE
Cumberland, ss, Clerk's Office

STATE OF MAINE                                    JUL 17 2017

v.                                          **RECEIVED**            ORDER

JASON GRAVES,

        Defendant


Before the court is a motion by defendant Jason Graves to suppress the results of a search

during the early morning hours of June 16, 2016 of a vehicle in which he was a passenger. A

hearing was held on June 27, 2017.

The court finds the following by a preponderance of the evidence:

Sometime around 11:30pm on June 15, 2016 New Hampshire State Trooper Brian Gacek

stopped a red Chevrolet Cobalt sedan with Maine license plate 9672 UQ heading north on

Interstate 95 south of the Hampton NH toll station. His stop was based on some drifting between

lanes and the fact that he ran the registration, which indicated that the license plate belonged on a

different vehicle. The legality of that stop is not challenged in the motion to suppress. In the

course of that stop Trooper Gacek spoke to the driver of the vehicle, Robert Robinson, and the

front seat passenger, Jason Graves, the defendant in this case.

During the course of his initial interaction with Robinson and Graves, Trooper Gacek

observed a baggie with the corner cut off — frequently used to package drugs — and noticed that

both occupants were very nervous.[1] Robinson said they were coming from Connecticut but

initially could not answer where in Connecticut, then mentioned Hartford. By this time Gacek

---

[1] Gacek also observed a large open bag of Skittles and multiple sodas, which in his experience can be an
indication of drug use because addicts consume high sugar foods to ease the effects of coming down from
being high.

had discovered that the registration was in order[2] but he had formed a reasonable articulable suspicion that there were illegal drugs in the vehicle. As a result, he spoke to Robinson outside of the car, and Robinson then stated that he had been to Connecticut to pick up a small pit bull puppy from someone named "Frenchie," who knew Graves's girlfriend. At this point Robinson also said he had been to several towns in Connecticut (but this time omitted Hartford) and told Gacek that he had had a drug problem but had been clean for 5 years. Gacek then spoke separately to Graves, who contradicted Robinson by stating that neither he nor his girlfriend knew "Frenchie."

Gacek asked for consent to search the vehicle, which Robinson gave both orally and in writing. Gacek did not find any drugs but found a Burger King bag on the floor of the passenger compartment, where Graves had been seated, which contained baggies with used needles and baggies containing a powdery substance that looked like drug residue. In the course of the search both Graves and Robinson changed their stories – acknowledging that they had not picked up the puppy but had instead gone to Connecticut to sell Robinson's truck. When Gacek said he did not believe that story, Robinson said he had transferred his truck to pay off a drug debt.

When Gacek searched the vehicle, he did not find any drugs. No canine was available, and Gacek decided not to make an arrest based on the residue that he had observed, so he allowed Robinson and Graves to proceed. However, Gacek thereafter communicated by text with Maine State Police Sgt. Kevin Rooney. In his texts Gacek identified the vehicle by model, color and license plate and informed Rooney that he had seen needles and drug residue. He stated that he was convinced he had missed drugs in the vehicle. In a subsequent phone call Gacek did not

---

[2] The car had been registered the previous day by Graves's girlfriend using a pre-existing plate number. That change of registration had not yet been entered into the database available to Gacek when he ran the registration.

2

provide all the details of his interaction with Robinson and Graves, but Gacek did state that their stories had been inconsistent and they had been very nervous.

Sgt. Rooney went out to mile marker 36 on the Turnpike in Saco. At around 1:36 am on June 16, he observed the red Cobalt sedan travelling north and began following it. Although he observed some driving that he considered odd,[3] he did not observe any traffic violations. However, he also ran the registration while following the vehicle and learned that the vehicle seemed to have an expired registration and that the license plate appeared to belong on a different vehicle. For that reason, Rooney activated his blue lights at around 1:38 am.[4]

Rooney did not know that the vehicle had been registered the previous day using a pre-existing plate number because that information was not available when he ran the registration and had not been communicated to him by Gacek. Graves does not challenge the legality of Rooney's initial stop.

After the vehicle stopped, Rooney approached the vehicle and asked for driver's license and registration. Within several minutes he ascertained that the car was properly registered to a third party. However, based on the information he had received from Gacek and Rooney's own observations that both occupants of the vehicle were extremely nervous, Rooney reasonably suspected that there were drugs in the vehicle.[5] He asked the driver, Robinson, to step out of the vehicle, conducted a pat-down search, and inquired where the vehicle was coming from.

---

[3] When he first observed the vehicle, it seemed to be following another car too closely even though there was very little traffic. Once he followed it, it changed lanes and began to drive approximately 10 miles below the speed limit.

[4] Technically, the detention of the vehicle commenced approximately 30 seconds later, when the vehicle came to a halt at the side of the road. *See Arizona v. Johnson*, 555 U.S. 323, 332 (2009).

[5] That the vehicle was registered to a third party was consistent with Rooney's suspicion, because he was aware that persons transporting narcotics often used vehicle belonging to others in an attempt to avoid any vehicle forfeiture in the event narcotics were discovered in the vehicle.

3

Robinson stated that he had been to Connecticut and had sold a truck there to a Dominican or Puerto Rican named "Frenchie." Robinson added that his vehicle had been searched by a law enforcement officer in New Hampshire and stated that Sgt. Rooney could also search the vehicle if he wanted to.

Robinson voluntarily gave his consent to search -- consistent with the previous consent to search he had given in New Hampshire -- and he did so almost immediately. The cruiser camera video of the stop (State's Ex. 3) has almost no audio because Rooney left his microphone in the cruiser. It indicates that Robinson exited the vehicle at Sgt. Rooney's request less than two minutes after Sgt. Rooney first approached the vehicle, that Rooney's initial discussion with Robinson lasted approximately a minute, and that consent was given at that time - within three or four minutes after the stop. There is a brief snippet of audio from the cruiser camera video which confirms that, after initially conversing with Robinson, Rooney briefly returned to the cruiser approximately three and a half minutes after the stop and advised the dispatcher by radio that he was going to conduct a search of the vehicle. This timing is also consistent with Rooney's report (Defense Ex. 2).

There was a delay in performing the search for two reasons. The first was that Rooney was alone with the two occupants of the vehicle and for officer safety reasons did not want to perform the search until another officer was present. The second and more important reason was that Rooney decided to employ a dog in the search, and no dog was immediately available. Rooney asked for a dog approximately three minutes after he had informed dispatch that he was going to conduct a search. The closest available dog and handler was at the Portland Police Department, and within five minutes, according to State's Ex. 3, there was a radio message that a

4

Portland canine was en route. Neither Graves nor Robinson objected that the search was taking too long.

In the interim Rooney continued to question Robinson, who stated that he was an opiate addict but had not used in a while. Approximately nine minutes after the stop Sgt. Rooney told Robinson, who had been standing with Rooney between the red Cobalt and the State Police cruiser, to stand in front of the red Cobalt. He then asked the passenger (defendant Graves) to exit the vehicle and patted him down. Before he did so, he asked Graves if he had anything on his person and Graves stated that he had a package of diabetic needles in his pocket. When asked if he was diabetic, Graves said he was not.

Graves removed the package of needles and stated that Sgt. Rooney could search him. In Graves's pockets Sgt. Rooney found some papers and unused baggies that appeared to be the kind used for packaging drugs. He then patted down Graves and found nothing more but again noted that Graves was extremely nervous, that his hands were shaking, and that he was tensing up while Rooney performed the pat down. At that point, Sgt. Rooney was still alone with the two occupants of the vehicle and with a legitimate concern for officer safety, Sgt. Rooney handcuffed Graves.[6]

Waiting for the second officer and the canine, Sgt. Rooney questioned Graves, whose story was inconsistent with the statements previously given by Robinson.[7] State's Ex. 2 shows

---

[6] *See United States v. Fornia-Castillo*, 408 F.3d 52, 64 (1st Cir. 2005) (use of handcuffs does not necessarily transform valid *Terry* stop into de facto arrest). Graves was handcuffed approximately 11 minutes after the stop and two minutes after Graves exited the vehicle.

[7] Specifically, Graves stated that he and Robinson had been to Connecticut to sell a truck and to pick up the puppy in the vehicle, although Robinson had previously stated that he had owned the dog for several months. While he was waiting for the canine, Sgt. Rooney went back to speak with Robinson, who acknowledged that contrary to his earlier statements he had transferred the truck to pay off a drug debt. Subsequently, Sgt. Rooney questioned Graves about the inconsistency between what Graves had said and what Robinson had said about the puppy, and Graves acknowledged he had lied.

5

that for much of this time, Rooney and Graves appeared to be conversing in an amiable fashion, and at one point Rooney gave Graves a cigarette.

State's Ex. 3 indicates that the second officer, Sgt. Hare, arrived on the scene approximately 25 minutes after the stop, at around 2:00am. State's Ex. 3 also shows that Portland canine officer arrived approximately 10 minutes later – 33 minutes after the stop – and began a search with the canine at approximately 2:15am – 37 minutes after the stop.[8] The Portland police dog showed significant interest in the front passenger compartment of the vehicle and on the front right side of the vehicle,[9] and that caused Sgt. Rooney to reach into a recess behind the glove compartment, where he found a package wrapped with packing tape. As he opened the package, coffee grounds spilled out. In Sgt. Rooney's experience, drugs are often wrapped in coffee grounds because it is believed that this will interfere with the ability of canines to detect the odor of drugs. Inside the package, there were three white balls in plastic baggies, which appeared to be cocaine, cocaine base, and heroin. These were subsequently field tested and came back positive.

Discussion

The State has the burden of demonstrating by a preponderance of the evidence the validity of the search undertaken by Sgt. Rooney, including whether there was a voluntary consent to search. The State has met that burden in this case.

The defense contention that the search of the vehicle in this case violated the Fourth Amendment is based on the U.S. Supreme Court's decision in *Rodriguez v. United States*, 135

---

[8] In the meantime the puppy in the red Cobalt had to be removed from that vehicle and the Portland canine officer had to be briefed on the situation.

[9] The State offered evidence as to the reliability of the Portland dog, which does not appear to be contested by the defense.

6

S.Ct. 1609 (2015). *Rodriguez* ruled that a traffic stop becomes unlawful if it is prolonged beyond the purpose of the original stop in order for the police to perform a dog sniff. 135 S.Ct. at 1615-16. In this case, the defense argues, the justification for the stop was the apparent registration problem and once that was quickly resolved, any further extension of the stop requires suppression of the drugs that were eventually found.

However, as the Supreme Court noted in *Rodriguez*, the issue in that case was whether police routinely could "extend an otherwise-completed stop, absent reasonable suspicion, in order to conduct a dog sniff." 135 S.Ct. at 1614 (emphasis added). Moreover, the *Rodriguez* decision did not suppress the evidence found in the stop but remanded in order to determine whether "reasonable suspicion of criminal activity justified detaining Rodriguez beyond completion of the traffic infraction investigation." 135 S.Ct. at 1616-17.

In this case, Sgt. Rooney had a reasonable articulable suspicion – based on what he had learned from Gacek bolstered by what he had observed in his initial interaction with Robinson and Graves – that Robinson and Graves were transporting drugs. Reasonable articulable suspicion may be based on the collective knowledge of law enforcement agents. *State v. Carr*, 1997 ME 221 ¶ 7, 704 A.2d 353. Rooney's suspicion was based on the presence of used needles as reported by Gacek, the presence of what appeared to be drug residue as reported by Gacek, the existence of inconsistencies between their stories as reported by Gacek, and the extreme nervousness observed by both Gacek and Rooney himself. This was at least sufficient to allow some brief further inquiry.

Thereafter, almost immediately after asking Robinson to exit the vehicle,[10] Sgt. Rooney obtained Robinson's consent to search the vehicle. This occurred within three or four minutes after the initial stop. Consent to search obtained after the reason for the initial traffic stop has

---

[10] This was permissible under *Pennsylvania v. Mimms*, 434 U.S. 106, 110-11 (1977).

been resolved has been found valid if, at the time of the request for consent, there is reasonable suspicion of drug activity. *See United States v. Figueroa-Espana*, 511 F.3d 696, 702-03 (7th Cir. 2007); *United States v. Sanchez*, 507 F.3d 877, 881-82 (5th Cir. 2007), *judgment vacated and remanded on other grounds*, 553 U.S. 1029 (2008); *United States v. Contreras*, 506 F.3d 1031, 1035-36 (10th Cir. 2007); *United States v. Ellis*, 497 F.3d 606, 613-14 (6th Cir. 2007); *United States v. Gallardo*, 495 F.3d 982, 987-88 (8th Cir. 2007); *United States v. Simms*, 385 F.3d 1347, 1353-55 (11th Cir. 2004); LaFave, Search & Seizure (5th ed. 2016) § 9.3(e) at n.306.

In this case, Sgt. Rooney did not have to request consent because Robinson (the driver of the vehicle) volunteered consent to search the vehicle. This was offered so promptly as to dispel any inference that consent was coerced because Robinson thought his vehicle would not otherwise be allowed to leave.

Once consent was obtained, Sgt. Rooney was allowed to detain the vehicle long enough to perform the search so long as he was acting diligently and reasonably. *See United States v. Sharpe*, 470 U.S. 675, 686-87 (1985); *United States v. Rosborough*, 366 F.3d 1145, 1150-51 (10th Cir. 2004) (general consent did not limit duration of search); *United States v. Alcantar*, 271 F. 3d 731, 738 (8th Cir. 2001) (consent search of an hour upheld where neither occupant of vehicle objected to the duration of the search). Courts have upheld detentions longer than the 37 minute detention in this case when officers have not been dilatory but there has been a delay in obtaining a drug dog. *See, e.g., United States v. White*, 42 F.3d 457, 460 (8th Cir. 1994) (hour and 20 minute delay caused by remote location of drug dog); *United States v. Frost*, 999 F.2d 737, 741-42 (3d Cir. 1993) (one hour wait). In this case Sgt. Rooney acted diligently in requesting a dog shortly after consent to search was obtained, and a Portland canine was

8

dispatched within five minutes. It was only because it took the canine officer approximately 27 minutes to travel to the scene from Portland that the search was delayed.

The defense argued at the hearing that Sgt. Rooney did not act with sufficient diligence because he could have requested a drug dog before the stop. However, the red Cobalt could have exited I-95 at any point before reaching Saco, and Robinson might not have consented to a search. Sgt. Rooney could not have been expected to have a drug dog waiting at roadside in Saco — and therefore unavailable if needed in Portland — for a vehicle that might never have arrived and a search that might never have happened.

The defense also argues that detaining the vehicle for 37 minutes amounted to a de facto arrest. If consent had not been given, this argument would have some traction, given that Graves was handcuffed approximately 10 or 11 minutes after the stop. However, the detention of Graves and Robinson resulted from Robinson's consent to search, which was given within four minutes of the initial stop. Accordingly, the court does not need to consider whether a de facto arrest occurred in this case or whether Sgt. Rooney had probable cause — as opposed to reasonable articulable suspicion — for a de facto arrest.

Finally, the defense does not appear to challenge that Sgt. Rooney was entitled to rely on the consent of Robinson, who as the driver had an appropriate relationship to the vehicle. *See State v. Kremen*, 2000 ME 117 ¶ 10, 754 A.2d 964. The defense also does not appear to challenge that the general consent, once given, extended to the entire car including the recesses of the glove compartment, and to the wrapped package found there. *See United States v. Ross*, 456 U.S. 798, 821 n.28 (1982); *United States v. Rosborough*, 366 F.3d at 1150-51 (general grant of permission to "go ahead" and search extended to the entire car).

Defendant's motion to suppress is denied.

9

Dated: July 17, 2017

Thomas D. Warren
Justice, Superior Court

10

STATE OF MAINE
vs
JASON GRAVES
121 SUNAPPLE LN
BROWNVILLE ME 04414

CRIMINAL DOCKET
CUMBERLAND, ss.
Docket No   CUMCD-CR-2016-03494

**DOCKET RECORD**

DOB: 12/27/1981
Attorney:    ANDREW EDWARDS                    State's Attorney:    STEPHANIE ANDERSON
             NORTHLAND LEGAL SOLUTIONS LLC PA
             PO BOX 18190
             PORTLAND ME 04112
             APPOINTED 12/22/2016
Filing Document:    CRIMINAL COMPLAINT          Major Case Type:  FELONY (CLASS A,B,C)
Filing Date:        06/17/2016

**Charge(s)**

1   AGGRAVATED TRAFFICKING OF SCHEDULED DRUGS              06/16/2016      SCARBOROUGH
Seq 9050          17-A  1105-A(1)(D)          Class A
ROONEY                                /   MSP
2   AGGRAVATED TRAFFICKING OF SCHEDULED DRUGS              06/16/2016      SCARBOROUGH
Seq 9064          17-A  1105-A(1)(H)          Class A      Charged with INDICTMENT on Supplemental Filing.
ROONEY                                /   MSP

**Docket Events:**

06/17/2016 FILING DOCUMENT - CRIMINAL COMPLAINT FILED ON 06/17/2016

06/17/2016 Charge(s):  1
           HEARING - INITIAL APPEARANCE SCHEDULED FOR 06/17/2016 at 01:00 p.m. in Room No.  1

           NOTICE TO PARTIES/COUNSEL
06/20/2016 Charge(s):  1
           HEARING - INITIAL APPEARANCE HELD ON 06/17/2016
           JOYCE A WHEELER , JUSTICE
           DA:  MATTHEW TICE
           Defendant Present in Court
                                    FTR1
06/20/2016 Charge(s):  1
           HEARING - DISPOSITIONAL CONFERENCE SCHEDULED FOR 08/16/2016 at 10:00 a.m. in Room No.  7

06/20/2016 Charge(s):  1
           TRIAL - JURY TRIAL SCHEDULED FOR 09/26/2016 at 08:30 a.m. in Room No.  11

           NOTICE TO PARTIES/COUNSEL
06/20/2016 BAIL BOND - $15,000.00 CASH BAIL BOND SET BY COURT ON 06/17/2016
           JOYCE A WHEELER , JUSTICE
06/20/2016 MOTION - MOTION FOR APPOINTMENT OF CNSL GRANTED ON 06/17/2016
           JOYCE A WHEELER , JUSTICE
           COPY TO PARTIES/COUNSEL
06/20/2016 Party(s):    JASON GRAVES
           ATTORNEY - APPOINTED ORDERED ON 06/17/2016

           Attorney: MARK BULLOCK
06/20/2016 BAIL BOND - $15,000.00 CASH BAIL BOND FILED ON 06/20/2016

           Bail Receipt Type:  CR
           Bail Amt:  $15,000
           Receipt Type:  CK
           Date Bailed:  06/17/2016      Prvdr Name:   JASON  GRAVES

Rtrn Name:

409

BAIL DISBURSEMENT ON             08/02/2016
Check No.    31109      Check Amount:     5,000.00
Paid To:     JASON GRAVES
RETURNED TO DEFENDANT


06/27/2016   MOTION - MOTION TO AMEND BAIL FILED BY DEFENDANT ON 06/27/2016


Attorney: MARK BULLOCK
06/27/2016   HEARING - MOTION TO AMEND BAIL SCHEDULED FOR 06/30/2016 at 01:00 p.m. in Room No. 1


NOTICE TO PARTIES/COUNSEL
06/27/2016   HEARING - MOTION TO AMEND BAIL NOTICE SENT ON 06/27/2016


07/01/2016   HEARING - MOTION TO AMEND BAIL HELD ON 06/30/2016
JED FRENCH , JUDGE
Attorney: MARK BULLOCK
DA: RAPHAELLE SILVER
FTR 1
07/01/2016   MOTION - MOTION TO AMEND BAIL GRANTED ON 06/30/2016
JED FRENCH , JUDGE
COPY TO PARTIES/COUNSEL                   IN PART
07/01/2016   BAIL BOND - $10,000.00 CASH BAIL BOND SET BY COURT ON 06/30/2016
JED FRENCH , JUDGE
W/ MPSC TO BE FILED WITHIN 7 DAYS. W/ CONDITIONS.
07/01/2016   BAIL BOND - CASH BAIL BOND COND RELEASE ISSUED ON 06/30/2016
JED FRENCH , JUDGE
07/01/2016   CASE STATUS - CASE FILE LOCATION ON 07/01/2016


AT SARAH'S DESK
07/01/2016   OTHER FILING - PRETRIAL SERVICES CONTRACT FILED ON 07/01/2016


07/01/2016   CASE STATUS - CASE FILE RETURNED ON 07/01/2016


07/05/2016   OTHER FILING - PRETRIAL SERVICES CONTRACT APPROVED ON 07/01/2016
ROLAND A COLE , JUSTICE
08/08/2016 Charge(s): 1,2
SUPPLEMENTAL FILING - INDICTMENT FILED ON 08/04/2016
JIM PAUL TURCOTTE , ASSISTANT CLERK
08/08/2016 Charge(s): 1,2
HEARING - ARRAIGNMENT SCHEDULED FOR 08/16/2016 at 10:00 a.m. in Room No. 7


08/08/2016 Charge(s): 1,2
HEARING - ARRAIGNMENT NOTICE SENT ON 08/08/2016
JIM PAUL TURCOTTE , ASSISTANT CLERK
08/08/2016   OTHER FILING - NOTICE OF JOINDER FILED BY STATE ON 08/04/2016


DA: CARLOS DIAZ
JOINED WITH ROBINSON 16-3493
08/12/2016 Charge(s): 1,2
MOTION - MOTION TO CONTINUE FILED BY STATE ON 08/12/2016

DA: CARLOS DIAZ

MOTION TO CONTINUE DISPO ON 8-16. DEFENDANT DOES NOT OBJECT

08/12/2016 Charge(s): 1,2

MOTION - MOTION TO CONTINUE GRANTED ON 08/12/2016

ROLAND A COLE , JUSTICE

COPY TO PARTIES/COUNSEL

08/12/2016 Charge(s): 1,2

HEARING - ARRAIGNMENT CONTINUED ON 08/12/2016


08/12/2016 Charge(s): 1

HEARING - DISPOSITIONAL CONFERENCE CONTINUED ON 08/12/2016

ROLAND A COLE , JUSTICE

08/15/2016 Charge(s): 1,2

HEARING - DISPOSITIONAL CONFERENCE SCHEDULED FOR 09/13/2016 at 10:00 a.m. in Room No. 7


08/15/2016 Charge(s): 1,2

HEARING - ARRAIGNMENT SCHEDULED FOR 09/13/2016 in Room No. 7


09/13/2016 Charge(s): 1,2

HEARING - ARRAIGNMENT HELD ON 09/13/2016

JOYCE A WHEELER , JUSTICE

Attorney: MARK BULLOCK

DA: CARLOS DIAZ

DEFENDANT INFORMED OF CHARGES.                    FTR 7

09/13/2016 Charge(s): 1,2

PLEA - NOT GUILTY ENTERED BY DEFENDANT ON 09/13/2016


09/13/2016 Charge(s): 1,2

HEARING - DISPOSITIONAL CONFERENCE CONTINUED ON 09/13/2016

JOYCE A WHEELER , JUSTICE

Attorney: MARK BULLOCK

DA: CARLOS DIAZ

PART OF DISCOVERY PROVIDED TODAY TO ATTORNEY. CONTINUED BY AGREEMENT.

09/13/2016 Charge(s): 1

TRIAL - JURY TRIAL CONTINUED ON 09/13/2016

JOYCE A WHEELER , JUSTICE

09/13/2016 HEARING - DISPOSITIONAL CONFERENCE SCHEDULED FOR 10/11/2016 at 08:30 a.m. in Room No. 7


10/11/2016 HEARING - DISPOSITIONAL CONFERENCE HELD ON 10/11/2016

LANCE WALKER , JUSTICE

Attorney: MARK BULLOCK

DA: CARLOS DIAZ

CONF HELD, OFFER MADE. NEW MOTION & JURY SELECTION DATES GIVEN. MOTIONS 12-8, JURY SELECTION 1-9-17

10/11/2016 Charge(s): 1,2

TRIAL - JURY TRIAL SCHEDULED FOR 01/09/2017 at 08:30 a.m. in Room No. 11


NOTICE TO PARTIES/COUNSEL

10/11/2016 Charge(s): 1,2

TRIAL - JURY TRIAL NOTICE SENT ON 10/11/2016

10/20/2016 MOTION - MOTION TO SUPPRESS EVIDENCE FILED BY DEFENDANT ON 10/20/2016


Attorney: MARK BULLOCK
10/20/2016 HEARING - MOTION TO SUPPRESS EVIDENCE SCHEDULED FOR 12/08/2016 at 01:00 p.m. in Room No. 1


NOTICE TO PARTIES/COUNSEL
10/20/2016 HEARING - MOTION TO SUPPRESS EVIDENCE NOTICE SENT ON 10/20/2016


11/28/2016 MOTION - MOTION TO CONTINUE FILED BY DEFENDANT ON 11/28/2016


TO CONTINUE MOTION HEARING 12-8-16. UNOPPOSED.
11/28/2016 MOTION - MOTION TO CONTINUE GRANTED ON 11/28/2016
PAUL A FRITZSCHE , JUSTICE
COPY TO PARTIES/COUNSEL
11/28/2016 HEARING - MOTION TO SUPPRESS EVIDENCE CONTINUED ON 11/28/2016
PAUL A FRITZSCHE , JUSTICE
11/28/2016 Charge(s): 1,2
TRIAL - JURY TRIAL CONTINUED ON 11/28/2016


11/28/2016 HEARING - MOTION TO SUPPRESS EVIDENCE SCHEDULED FOR 01/12/2017 at 01:00 p.m. in Room No. 1


NOTICE TO PARTIES/COUNSEL
11/28/2016 TRIAL - JURY TRIAL SCHEDULED FOR 03/13/2017 at 08:30 a.m. in Room No. 11


NOTICE TO PARTIES/COUNSEL
12/21/2016 MOTION - MOTION FOR WITHDRAWAL OF CNSL FILED BY COUNSEL ON 12/20/2016


Attorney: MARK BULLOCK
12/22/2016 MOTION - MOTION FOR WITHDRAWAL OF CNSL GRANTED ON 12/21/2016
LANCE WALKER , JUSTICE
COPY TO PARTIES/COUNSEL
12/22/2016 Party(s): JASON GRAVES
ATTORNEY - WITHDRAWN ORDERED ON 12/21/2016


Attorney: MARK BULLOCK
12/22/2016 Party(s): JASON GRAVES
ATTORNEY - APPOINTED ORDERED ON 12/22/2016


Attorney: ANDREW EDWARDS
01/04/2017 Charge(s): 1,2
MOTION - MOTION TO CONTINUE FILED BY DEFENDANT ON 01/03/2017


Attorney: ANDREW EDWARDS
MOTION TO CONTINUE HEARING ON 1-12-17. ADA DIAZ DOES NOT OBJECT
01/04/2017 Charge(s): 1,2
MOTION - MOTION TO CONTINUE GRANTED ON 01/04/2017
PAUL A FRITZSCHE , JUSTICE
COPY TO PARTIES/COUNSEL
01/04/2017 HEARING - MOTION TO SUPPRESS EVIDENCE CONTINUED ON 01/04/2017
PAUL A FRITZSCHE , JUSTICE
01/04/2017 HEARING - MOTION TO SUPPRESS EVIDENCE SCHEDULED FOR 02/23/2017 at 01:00 p.m. in Room No. 1

NOTICE TO PARTIES/COUNSEL
01/04/2017 HEARING - MOTION TO SUPPRESS EVIDENCE NOTICE SENT ON 01/04/2017


02/15/2017 MOTION - MOTION TO SUPPRESS EVIDENCE FILED BY DEFENDANT ON 02/15/2017


Attorney: ANDREW EDWARDS
AMENDED MOTION TO SUPPRESS EVIDENCE
02/24/2017 HEARING - MOTION TO SUPPRESS EVIDENCE CONTINUED ON 02/23/2017 at 01:00 p.m. in Room No. 1
JED FRENCH , JUDGE
Attorney: ANDREW EDWARDS
DA: ANGELA CANNON
FTR 1
02/24/2017 TRIAL - JURY TRIAL CONTINUED ON 02/23/2017 at 01:00 p.m. in Room No. 1
JED FRENCH , JUDGE
Attorney: ANDREW EDWARDS
DA: ANGELA CANNON
FTR 1
02/24/2017 HEARING - MOTION TO SUPPRESS EVIDENCE SCHEDULED FOR 05/11/2017 at 01:00 p.m. in Room No. 1

NOTICE TO PARTIES/COUNSEL
02/24/2017 HEARING - MOTION TO SUPPRESS EVIDENCE NOTICE SENT ON 02/24/2017
JIM PAUL TURCOTTE , ASSISTANT CLERK
02/24/2017 Charge(s): 1,2
TRIAL - JURY TRIAL SCHEDULED FOR 05/22/2017 at 08:30 a.m. in Room No. 11

NOTICE TO PARTIES/COUNSEL
03/30/2017 Charge(s): 1,2
MOTION - MOTION TO CONTINUE FILED BY STATE ON 03/29/2017


DA: CARLOS DIAZ
MOTION TO CONTINUE HEARING ON 5-11. ATTORNEY EDWARDS DOES OBJECT
04/05/2017 Charge(s): 1,2
HEARING - MOTION TO CONTINUE SCHEDULED FOR 04/06/2017 at 01:00 p.m. in Room No. 1

NOTICE TO PARTIES/COUNSEL
04/05/2017 Charge(s): 1,2
HEARING - MOTION TO CONTINUE NOTICE SENT ON 04/05/2017


04/07/2017 Charge(s): 1,2
HEARING - MOTION TO CONTINUE HELD ON 04/06/2017
JOYCE A WHEELER , JUSTICE
Attorney: ANDREW EDWARDS
DA: CARLOS DIAZ
FTR1
04/07/2017 Charge(s): 1,2
MOTION - MOTION TO CONTINUE GRANTED ON 04/06/2017
JOYCE A WHEELER , JUSTICE
COPY TO PARTIES/COUNSEL
04/07/2017 HEARING - MOTION TO SUPPRESS EVIDENCE CONTINUED ON 04/06/2017
JOYCE A WHEELER , JUSTICE

04/07/2017  Charge(s):  1,2
TRIAL - JURY TRIAL NOT HELD ON 04/06/2017


04/07/2017  HEARING - MOTION TO SUPPRESS EVIDENCE SCHEDULED FOR 06/27/2017 at 01:00 p.m. in Room No.  9


NOTICE  TO PARTIES/COUNSEL
06/21/2017  HEARING - MOTION TO SUPPRESS EVIDENCE NOTICE SENT ON 06/21/2017


06/28/2017  HEARING - MOTION TO SUPPRESS EVIDENCE HELD ON 06/27/2017
THOMAS D WARREN , JUSTICE
Attorney:  ANDREW EDWARDS
DA:  CARLOS DIAZ
FTR 9
06/28/2017  MOTION - MOTION TO SUPPRESS EVIDENCE UNDER ADVISEMENT ON 06/27/2017
THOMAS D WARREN , JUSTICE
06/28/2017  CASE STATUS - CASE FILE LOCATION ON 06/27/2017


IN JUSTICE WARREN'S CHAMBERS:  DEF MOTION TO SUPRESS UNDER ADVISEMENT
07/17/2017  CASE STATUS - CASE FILE RETURNED ON 07/17/2017


07/17/2017  MOTION - MOTION TO SUPPRESS EVIDENCE DENIED ON 07/17/2017
THOMAS D WARREN , JUSTICE
COPY TO PARTIES/COUNSEL
07/17/2017  MOTION - MOTION TO SUPPRESS EVIDENCE DENIED ON 07/17/2017
THOMAS D WARREN , JUSTICE
COPY TO PARTIES/COUNSEL


A TRUE COPY
ATTEST: _____
Clerk